JUDGB BULLITT
delivered the opinion op the godrt:
Robert WickliiTe, by a codicil to his will, made in 1854, devised to his daughter, Margaret, wife of Wm. Preston, certain property, including a tract of land called Piedmont, and containing 3,300 acres. in 1858 he authorized his agent to sell that part ofsaid land “lying over Slate creek,” being, as it appears, about 500 acres, if he could get $25 per acre. In July, 1859, the agent sold 199 acres of said land for $25 per acre, one-third payable on the 1st March, 1860, and the residue in one and two years thereafter, with interest from that date, and gave a bond therefor.- The testator was informed of the- *180 sale and assented thereto, but died on the 1st September, 1859, without having executed a conveyance. Preston and wife sued his executors for the value of said 199 acres, and obtained a 'judgment against them for $4,975, being the price for which the land was sold, with interest from March 1, 1860. From that judgment this appeal was taken.
The only question that we need to consider is, whether or not the sale of the land was, to that extent, a revocation or ademption of the devise.
Formerly, a sale by a testator, after making his will, of ■either land or personal property thereby devised, was an ademption of the legacy or revocation of the devise. It was not a question of intention. The ademption was effected upon the principle that the subject was annihilated, or its condition so changed that nothing remained to which the terms of the will could apply. (Ross vs. Carpenter, 9 B. Mon., 367; Hocker vs. Gentry, 3 Met. Ky. Rep., 473.) In the last named case, however, it was said, that “it seems clear, not only that these rules have been changed, both as to devises and bequests to an heir of the testator, but that the burthen rests on those claiming against the will to show that the testator, in selling the property, intended to adeem the legacy or devise. (Rev. Stat., chap. 46, art. 3.”) But as no reasons were stated for that conclusion, and as the sale in that case was of personal property, we propose to notice-in detail the arguments advanced to prove that the sale in this case was pro tanto a revocation of the devise.
The statute above referred to is as follows:
“§l,l. The conversion, in whole or in part, of money orprop-erty, or the proceeds of property devised to one of the testator’s heirs, into other property or thing, wdth or without the assent of the testator, shall not be an ademption of the legacy or devise, unless the testator so intended, but the devisee shall have and receive the value of such devise, unless a contrary intention on the part of the testator appear from the will, or by parol or other evidence.”
“§ 2. The removal of property devised shall not operate as an ademption, unless a contrary intention on the part of the *181 testator is manifested in like manner.” (Rev, Stat. chap. 46, art. 3.)
The appellants contend that this statute does not apply to a conversion of land, but only applies to a conversion of personal property by a testator, because the word “conversion” is properly applicable only to personalty, because the word “ademption” is properly applicable only to bequests of personalty, and because the second section of the article cited clearly applies only to personalty, since land cannot be removed.
According to the argument, if a testator should devise $10,-000 worth of personalty to one child and $10,000 worth of land to another, and should afterward sell both the land and personalty, the former devise would be defeated and the latter would not. We do not perceive what motive, if any, the Legislature had for making such a distinction. No such distinction existed before the statute, but a sale of either land or personalty defeated the will pro tanto Not do we find in the language of the statute any convincing proof that it was designed to change the law merely with respect to personalty, and thus to establish the distinction contended for.
The word “conversion” has a technical meaning with reference to certain tortious acts, and in that sense applies only to personal estate. But it was not used in that sense by the framers of this statute, since such tortious acts cannot be committed by a testator with reference to his own property. It has another meaning which applies alike to real and personal property. The purchase of land with money is a conversion of money into land; and the sale of land for money is a conversion of the land into money. And even a direction,' in a deed of trust or will, to buy land with money, or to sell land tor money, is, in equity, a conversion of the money, into land and of the land into money. The word conversion, therefore, as used in this statute, is as applicable to real as to personal estate.
Though a sale of la'nd by a testator was formerly designated, technically, as a revocation of the devise, we do not regard the omission of the word “revocation” from the statute under consideration as entitled to much significance. It is *182 .contained in a chapter entitled, “Heirs and Devisees," and in ,an article entitled. “Ademption of Legacy, &c,” and it speaks of the ademption of the legacy or devise, and declares that the devisee shall have the value of such adeemed devise; in each of which respects the language is technically incorrect, according to the former rules, if it was designed to apply only to bequests of personalty. But in another part of the Revised Statutes it is declared that “the words ‘legatee’ and ‘devisee’ shall each be held to convey the same idea, and the words ‘bequeath’ and ‘devise’ to mean the same thing; and the words ‘bequest' and ‘legacy’ shall each be held to mean the same thing,-and to embrace and include either real or personal estate or both.” (Chapter 21, section 25.) The framers of the Revised Statutes, having thus abolished the distinction between the words bequeath and devise, legatee and . devisee, could properly use the word “ademption” with . reference to real and personal estate.
Personal estate can be. removed, real estate cannot. The provision concerning the removal of property devised applies, therefore, to personal estate only. But we do not perceive upon what principle this provision concerning an act that can only be committed with reference to personal estate, can be so construed as to limit to personal estate the provision concerning the conversion of property devised. Our conclusion is, that the statute applies to a conversion of real as well as personal estate, and that a sale of land for money is a conversion of it within the statute.
As the statute declares that the conversion of property by a testator shall not be an ademption of the devise, but that the devisee shall have the value of the devise, unless a contrary intention on the part o' the testator appear from the will or by parol or other evidence, it necessarily follows that those claiming against the devisee must show that the conversion was made with an intention to adeem the devise. The sale of the land by the testator in this case raised no presumption, even, of such an intention; the burthen of proving the intention rests on the executors.
*183 They contend that such an intention appears from the will. The testator had three daughters, to each of whom he made specific devises. Concerning one of them he declared as follows: “If I should sell or otherwise dispose of any of the real estate devised to Sally W<o!ley, and app’opriate the proceeds to my own use, and not by will, deed, or gift, compensate or substitute other real estate in lieu thereof, then she is to have assigned her, out of my real estate not specifically devised, estate equal in value to what I may have disposed of, the value to be fixed at the price I may have sold it.” It is contended that this provision concerning Mrs. Woolley, and the absence of such a provision concerning the other daughters, shows that that the testator intended to adeem the devises to the latter if he should sell the lands devised to them. This provision, if there was nothing else in the will to explain its meaning, would not perhaps be sufficient to show that the testator contemplated the discrimination between his daughters contended for by the appellants; because, in the first place, the testator may have expected to sell some of the land devised to Mrs. Woolley and not to sell any of that devised to his other daughters, and for that reason may have inserted the provision in question; and, in the second place, he ma'y have inserted it merely for the purpose of giving, land instead of money to Mrs. Woolley, in lieu of any of the real estate devised to her, which he might dispose of. Under the statute, without any provision in the will on the subject, she would have been entitled to the value in money of such estate; but he directs real estate to be assigned to her instead of money. The provision apparently evinces an intention on the part of the testator to discriminate between his daughters, merely so far as to give real estate to Mrs. Woolley in lieu of such of her devise as he might dispose of, leaving to his other daughters their right to the value', in money, of such of their devises as he might dispose of. Our belief that such was his purpose is strengthened by two other clauses of the will, in one of which, after having directed that each of his daughters should be charged with $40,000 for previous advancements, he states that he had in fact advanced more than that sum to Mrs. Woolley and her husband, and *184 states his reasons for charging her with only that sum, and then expresses a hope that his other two daughters “would cheerfully accord and assent to the equal distribution of my undivided estate, as hereinafter made, on account of the reasons and considerations which influence me now to make and regard them as all equal in their advancements;” and in another of which, after devising to Mrs. Margaret Preston his mansion house, and declaring that she is to take and hold it as a gift from her mother, made to her as a testimony offher love and affection for her while she lived, he declares that “Margaret is to have this exclusive of her equal portion of nty estate, and is not to be charged with its value.” Our conclusion is, that an intention to adeem the devise of the converted land is not apparent from the will.
It is also contended that the testator sold the 199 acres of the Piedmont land for the purpose of paying his attorneys fees and other expenses, amounting to about $6,000, incurred in a suit between him and Todd’s heirs, concerning the Eileslie farm, which he also devised to Mrs. Margaret Preston, and that therefore he intended to adeem the devise by selling the land. What weight this argument would have been entitled to if the debt had been a charge upon the Eileslie farm we need not decide, because it was a general debt., which if not paid by the testator would .have fallen upon the residuary . which he directed to be equally divided between his heirs after the payment of debts. It might perhaps have been doubtful whether a sale of the 199 acres, to pay that debt, would, alone, have sufficed to show an intention to adeem the devise. But we need not decide that question for two reasons:
1. We are not satisfied that the land was sold for that purpose. The testator’s letters show that he owed other debts to a large amount, which he was anxious to pay before his death. Pie did not direct a sale of so much of the Piedmont land as would pay said $6,000, but authorized a sale of all of it “lying over Slate creek,” being about 500 acres and worth over $12,-000. At the same time the agent was authorized to sell various other lands. The testator’s object was to raise money enough to pay all his debts by selling so much of the 500 acres *185 and of the other lands just referred to, as would suffice to pay them all, including the $6,000. The land authorized to be sold appears to have been worth more than the debts. The agent was not directed to sell the Piedmont land in preference to the other land. He was to sell an}' tract for which he could find a purchaser at a fair-price. And there is reason to believe that, if enough of the other lands had been sold to pay all the debts, including the $6,000, the testator would not have sold the Piedmont land.
2. The testator’s first letter to his agent, concerning the sale of the Piedmont land, was dated Feb. 5, 1858. In that letter he did not speak of the $6,000 debt, but said: “I shall be so hard run for money that I must sell something.” In a letter to the same agent, dated Feb. 12, 1858, .after stating that he had gained his suit with Todd’s heirs, he said: “The charges of my lawyers upon me are excessive, and I must, through the coming year, spare as much from my expenses as will extinguish their fees.” The supposition that he intended to make Mrs. Margaret Preston pay those fees would, in our opinion, be inconsistent with this letter, which evinces an intention on the part of the testator to relieve not only her, but his estate, from any loss on that account, by reducing his expendí* tures.
The judgment is affirmed.