### NASHUA SAVINGS BANK *v.* THE CITY OF NASHUA.

Real estate belonging to a savings bank is taxable to the bank in the town or place where the real estate is situated.

If a savings bank own stock in another corporation the bank is not taxable for the stock in the town or place where the bank is situated.

THIS was a petition for the abatement of taxes, assessed against the said bank in the general assessment of taxes by the assessors of said city, for the year 1864, on the following described property, as the property of said bank, to wit, one lot of land and barn on Pearl street, valued at three hundred dollars; one half Barrett house on School street, valued at four hundred dollars; fifty-seven shares in the Pennichuck Water Works, valued at fifty-seven hundred dollars.

It was agreed by the parties that the petitioners are a Savings Bank under the laws of this State, established and doing business in said city. That the said first named lot was, on the first day of April, 1864, the property and in the possession of said bank, having become so by the foreclosure of a mortgage given to said bank as security for money lent by them; that said Barrett lot was on said 1st day of April, in the possession of said bank by virtue of a writ of possession issued on a like mortgage, but which was not then foreclosed; and that said water stock was then the property of said bank, having been purchased by them. That said loans were made and said shares purchased by said bank from time to time, out of the general deposits and accumulations and earnings thereon, made to said bank in the ordinary course of business; said Pennichuck Water Works are a corporation under the laws of this State, established and doing business in said city, and said shares were returned by the proper officers of said water works, to said assessors, as the property of said Savings Bank, and said real estate so taxed is situate in said city.

The said tax so assessed was for State, county, city, school and highway tax, and amounted in the whole to $89.60, to which was added a school district tax of $2.94; and it was admitted and agreed by the parties that said bank duly made the returns by law required to be made by them, and that said assessments were duly and properly made, and that said bank is liable to pay said taxes unless exempt therefrom by law, and that said bank has made due application to said assessors for

the abatement of said taxes, which was refused.   Said Savings Bank complied with the provisions contained in chapter 41, section 4, of the Revised Statutes, of this State, and it was agreed that judgment may be ordered by the court above in accordance with the rights of the parties.

*A. W. Sawyer*, for the plaintiffs.

*A. F. Stevens*, for the defendants.

The case finds that the petitioners were the owners of the real estate on Pearl street, and also of the Pennichuck Water Stock, and that they were in possession of the Barrett lot for the purpose of foreclosure.

By our laws the stock was properly taxed to the Savings Bank and could not be taxed otherwise.   And so of the real estate, which could not be otherwise taxed while in possession of the bank.  Comp. Stat. chap. 41, sec. 3 ; chap. 42, secs. 1, 4, 9.

To this taxation the petitioners object that it is double, because the deposits with which the property was purchased have been taxed to the depositors.   We say in answer to this that it is not double and that the case does not so find.

The property was purchased as well with the earnings and other accumulations of the bank, as with the deposits by law exempt from taxation to the depositors.   It is impossible to say in fact that any of the taxed deposits went to the purchase of this property.   It is not enough that they *may* have been so applied.   If the bank claims exemption on the ground taken here, they should so make their investments and keep their accounts that they can show definitely and with certainty a double taxation of their property.   They have not done this and the case so shows.

The effect of the construction contended for by the petitioners, would be to exclude from taxation a large amount of real estate and other property which the law says shall be taxed to the owners thereof.   And the law says all real estate shall be taxed in the town in which it is situate.   Comp. Stat. chap. 42, sec. 9.

Considering the character of the purchase and investment by the bank, and the provisions of the law above cited, we submit that the action of the assessors of the city was correct and legal.   We say that it is not a double taxation.   It is at most an uncertain and possible taxation, not of the deposits themselves, but of other property, acquired by the bank in the ordinary course of its business, and which by law is required to pay a tax.

It is difficult to see any distinction between the principle of this case and that of mortgagor and mortgagee of real estate.   The mortgagee pays a tax on the money secured ; the mortgaged property pays a tax at its full valuation.   Suppose this property of the petitioner to have been purchased wholly with deposits that were taxed, the case would be similar, the depositor paying a tax on his deposits and the property being taxed according to its valuation.

To go further; suppose such mortgagee to be in possession for the purpose of foreclosure, his debt being taxed as money at interest, is the mortgaged real estate for that reason exempt? We think not. Nor can we see why the bank should stand on any better footing as to its real estate and other property.

PERLEY, C. J. The land belonging to the Savings Bank and lying in Nashua was properly taxed to the bank in that town. The bank was in possession of the land with a legal title, and it was taxed in the town where it was situated. All real estate, with certain enumerated exceptions, is made liable to taxation, and the statute is express that it shall be taxed in the town or place where it is situated. Rev. Stat. ch. 39, sec. 2, and ch. 40, sec. 7.

There is an obvious reason for this general rule, which requires all real estate to be taxed where it is situated. Personal property is transitory and follows the owner; but land is stationary, and cannot be withdrawn from sharing in the public burdens of the place where it lies. If it were taxed to the non-resident proprietors in the places where they reside, it might happen that taxable property enough would not be left where the land was situated to bear the charges of local expenditures.

Because the land belonging to the bank and situated in Nashua is taxable in that place to the bank, it by no means follows that stocks and other personal property of the bank are also taxable to the bank in Nashua where the bank is established and has its place of business. The land is taxable in Nashua, not because the bank is there, but because the land is there. If the land were not in Nashua, though it belonged to the bank, it could not be taxed in Nashua, but must be taxed in the town where it is situated. And so if it had happened that this bank had established its place of business in some other town, this land situated in Nashua, could not be taxed in the other town, where the bank was established. It thus appears that the place where the business of the bank is transacted has nothing whatever to do with the right of Nashua to tax this real estate; and I think it will be found on further inquiry that it has just as little to do with the right claimed by Nashua to tax the bank for stocks in another corporation.

This distiction between the liability of corporations to be taxed for their land and for their real estate, is established by numerous authorities. In the *Boston Water Power Co.* v. *Boston*, 9 Met. 199, it was held that the corporation were liable to be taxed for their real estate situated in that city, but not for their personal estate or income. In that case *Shaw, C. J.*, says: "If it be said that the plaintiffs are not a manufacturing corporation, then there is no statute provision making any of their personal property liable to taxation, and the respective owners are taxable for the whole value of the personal property, and of course the corporation is not taxable. But the real estate stands upon a different footing, and must be taxed where it is situated whoever the owner is, and therefore is taxable to the corporation." So, in the *Commercial Bank* v. *Mumford*, 4 R. I. 478, it was decided that by the law of Rhode Island banks of discount and deposit were taxable for

their real estate in the towns where it was situated, but not for their personal estate in the towns where the banks were established, and the same rule was applied to the case of a savings bank in the *Providence Savings Institution* v. *Gardner*, 4 R. I. 484.

Personal property, as a general rule, is taxable to the owner in the place where he resides, and land is always, so far as I am informed, in the place where it is situated. In the case of corporations, which deal in money and securities, like banks, the stockholders are the beneficial owners of all the corporate property, and are taxed for it in the places where they reside; and consequently the personal property of such corporations is not liable to another tax assessed on the corporation in the town where it is established and has its principal place of business. In some cases where personal property is employed in manufactures and in trade, and by the nature of the employment is paid in the place where the business is transacted, and in that respect assumes the character of real estate, the property is taxed in the place where it is so employed. In making personal property so used and employed taxable where it is situated, the law follows the same general policy, which requires land to pay taxes in the place where it is situated.

By our statute all real estate, with certain specified exemptions, is liable to be taxed. Rev. Stat. ch. 39, sec. 2. But it is important, in the present inquiry, to bear in mind that there is no law of this State which makes personal property generally liable to taxation. · Our statute sets out and describes the different classes of personal property liable to be taxed, and no other personal property than the kinds thus specified and enumerated is liable to be taxed in this State. Rev. Stat. ch. 39. sec. 3. The chapter, which declares and defines what personal property is taxable, does not prescribe the rate or the mode of taxation; it only states what personal property shall be liable to taxation; and the evident intention is that no other personal property shall directly or indirectly be taxed or bear the burden of taxation. Other chapters prescribe where and to whom the property thus made liable to taxation shall be taxed, and in what manner the tax shall be assessed and realized. *Smith* v. *Burley*, 9 N. H. 423, 429. It is not, therefore, incumbent on the party, who resists a tax assessed on personal property, to show a special exemption; but the town, which claims the right to tax, must show that the property taxed comes within some description of property made specially liable to taxation by statute.

I find no law of this State which authorizes the personal property belonging to a savings bank, or to a bank of discount and deposit, to be taxed to the bank in the town where it is established and has its place of business.

It has been said that a corporation is a person within the meaning of the statute on the subject of taxation, and that the establishment of a corporation in a town is equivalent to the residence or inhabitancy of a person there; and that consequently a corporation may be taxed for its personal property in the place where it is established, under the statute which provides that "every person shall be taxed in the town in which he is an inhabitant or resident on the first day of April, for his poll and

estate, except in cases otherwise provided for by law." Rev. Stat. ch. 40, sec. 1. It is evident that if this construction of the statute can be applied to savings banks, it may be to every other bank and to corporations generally; and that if it can be applied to stock owned by a corporation, it is equally applicable to all other kinds of taxable personal property. Stocks in corporations, with the exception of railroad and manufacturing corporations, are taxed to the owners of the stock in the towns or places where they reside, if they reside in this State; and where they reside out of the State the stock is taxed to the corporation; but the corporation has a lien on the stock for the taxes thus paid on account of the non-resident stockholders, so that ultimately in all cases the stockholders pay a tax on all the property of the corporation. Rev. Stat. ch. 40, secs. 4 and 15. The consequence of treating corporations as persons residing in the town where they are established and taxing them there for the personal property which they own on the first day of April, would be to levy a double tax on all such property; a result which never could have been contemplated by the statute. And looking to the language of the statute we see that the person made by it liable to be taxed is one that is an inhabitant or resident of the town and is taxable for his poll as well as his estate. It can hardly be seriously maintained that a savings bank is such a person,—one that is an inhabitant or resident of the town,—and liable to be taxed for his *poll* and estate. A construction so unnatural and forced, and leading to such consequences, would do violence to the language of the statute and be in direct conflict with the whole policy of the law, which everywhere aims to avoid the injustice of double taxation.

In certain cases property of corporations is by special provisions of the statute taxable to the corporations; and where the law has made property taxable to the corporation, and no other provision is made on the subject, there is an express provision of the statute that it shall be taxed to the corporation by its corporate name in the town or place in which it is situated; a provision which would be idle and wholly unnecessary, if corporations for the purposes of taxation were to be regarded as persons residing in the places where they are situated; and this special provision that corporations shall in certain cases be taxed in the places where they are situated, furnishes a strong argument to show that it was not intended they should be taxed there in other cases.

Property must be taxed to the parties and in places that the law prescribes, and cannot be taxed to other parties or in other places. I do not think that corporations are persons inhabiting and residing in the towns where they are situated within the meaning of the statute which makes such persons liable to be taxed for their polls and estate in the towns where they reside. And I find no other law of this State which can be supposed to authorize stock of another corporation to be taxed to a savings bank in the place where the bank is situated.

If the personal property of a savings bank can be taxed to the bank in the place where it is situated, certainly the personal property of o'her banks may be so taxed; for if a savings bank is a person and an inhabitant of the town where it is situated, a bank of discount and deposit

must be so.  There can be no distinction in this respect between the two kinds of banks.   And I take it to be quite clear that a bank of discount and deposit is not liable to be taxed in the place where it is situated, for stocks of another corporation, or for other personal property; and there is an excellent reason why there should be no such tax, for, if there were, it would be a double tax of the same property.   All the funds and property of the bank are taxed to the stockholders on the appraised value of all the stock; stock in other corporations and other personal property of the bank goes to make up the appraised value of the stock.   If, therefore, the bank owning stock of another corporation, or other personal property, is taxed for it in the town where the bank is situated, such stock or other personal property pays two taxes, one assessed on the individual stockholders, and another assessed to the bank on the specific property.

Suppose, for an illustration, that there were two banks, each with a capital of one hundred thousand dollars, and one of them should become the owner of all the stock in the other by purchase from the stockholders, then the stockholders, who had sold their stock, would take and carry away the capital which they had paid into the bank, and the capital of the other bank, instead of being invested in notes and securities, would consist of the stock thus purchased; and it is plain that there would be but one sum of one hundred thousand dollars for the capital of both the banks.   If, then, the bank which owned the stock of the other corporation, were taxed for it in the town where the bank was situated, the same hundred thousand dollars would pay two taxes, one assessed to the bank on the stock of the other corporation, and another on the stockholders of the bank in the towns and places where they resided.   Such is the plain mathematical operation of the transaction; and so, *pro tanto*, if part of the funds of a bank were invested in the stock of another corporation.

There appears to be no law of this State, which, in terms, or by any fair construction, authorizes the stock of one corporation to be taxed to another corporation in the town or place where it is situated; and it is quite clear to my mind it was never intended that any such tax should be assessed, because it would amount to a double taxation as has been shown.   And without resorting to the law relating specially to the taxation of funds in savings banks, the plaintiffs might well rely on the general negative position that there is no provision of the statutes which gives the defendants authority to assess their tax on the personal property of the bank.

But the position that the personal property of savings banks is not taxable to the banks in the places where they are established and transact their business, does not rest merely on the want of statutory provision for so taxing it.   The intention to omit from taxation, direct and indirect, all deposits under three hundred dollars in amount, is readily inferred from the successive provisions which the legislature have from time to time made on the subject.

Since the statute of January 4, 1833, money deposited in savings banks has, for the purposes of taxation, been specified as a separate and

distinct kind of property, and made liable to be taxed as such; from which the inference is strong that the intention was it should be taxed in that way and no other.    That statute enumerates the different kinds' of personal property subject to taxation, and among them we find "money at interest more than the owner pays interest for, including money on hand or deposited in any bank, and all deposits in any savings bank or institution where the whole amount of deposits exceeds one hundred dollars."    It is quite impossible to believe, that, by introducing this distinction between deposits in savings banks and in other banks, the intention was to discriminate against deposits in savings banks, making those over one hundred dollars in amount taxable to the depositors in the towns where they resided, and leaving all the deposits, large and small, liable to a tax assessed on the personal property of the bank in the place where it was situated.    The manifest intention was to favor and encourage small deposits in savings banks by omitting them from the list of taxable personal property, and not to impose two taxes on deposits of more than one hundred dollars in amount, one assessed on the depositors, and the other on the personal property of the bank.

By the Rev. Stat. ch. 39, sec. 3, art. 3, "all money on hand or at interest more than the owner pays interest for, including money deposited in any bank or savings institution," was liable to be taxed without regard to the amount of the deposits, and, by ch. 40, sec. 1, was taxable to the depositors in the towns where they resided.    Under these provisions of the Revised Statutes, the whole amount of the deposits paid a tax like other money, assessed on the depositors, who were the beneficial owners of all the funds and capital of the bank in the towns where they resided.    I cannot bring my mind to entertain the opinion that this money, so deposited and invested by the bank for the depositors, having paid a full tax assessed on the deposits, was intended to be liable to another tax assessed on the bank in the place where the business of the bank was transacted for the benefit of that place.    We may safely take it for granted that under the Revised Statutes no stock, money at interest or other personal property belonging to savings banks, could be taxed to the banks in the places where they were established.

The law so remained till the act of 1848, which required the treasurers of savings banks to give assessors notice of deposits amounting to one hundred dollars and upwards, standing to the credit of depositors residing in the respective towns.    This, it is said, exempted deposits for less than one hundred dollars from taxation in the towns where the depositors resided.    I do not think that *exemption* is the most appropriate word to be used in this connection, as it would seem to imply that there is some general law, making personal property liable to taxation, unless it can claim a special exemption, whereas the party that claims the right to tax is bound to show the particular law which makes the property taxable.

If, after the statute of 1848, deposits under one hundred dollars in amount were not taxable to the depositors, it was because so much of the former law as made such deposits liable to taxation was repealed by implication.    Take that to have been the case, how will the law read

after this implied repeal? It would stand thus : "All money on hand, including deposits in savings banks of one hundred dollars and upwards," is liable to be taxed, leaving deposits under one hundred dollars without any provision for taxing them.

What effect are we asked to give this statute repealing so much of the former law as made deposits under one hundred dollars liable to be taxed? We are asked to make the personal property of the bank liable to a tax assessed on the corporation in the town where it is established, leaving deposits for one hundred dollars and over liable, as before, to a tax assessed on the depositors, thus imposing on them an additional and double tax, and also transferring the whole benefit of the tax assessed on the personal property of the corporation from the towns where the depositors and beneficial owners reside, to the place where the bank transacts the business of managing their money for them. It would be extravagant to maintain that an implied repeal in part of the burden before imposed on money saved up in these institutions was intended to impose an additional and double burden on deposits for one hundred dollars and upwards. I can have no doubt that the intention was, on the contrary, to encourage and favor small deposits in savings banks by relieving them wholly from the burden of taxation, leaving them to stand in this respect on the same footing with other large classes of personal property, which are not liable to be taxed because they are omitted from the list of taxable articles.

It may be instructive to look a little at some other provisions of the statute which declares and defines what personal property shall be liable to taxation. Among the things enumerated are "all carriages if exceeding fifty dollars in value; all horses, asses and mules over 18 months old; all oxen, cows and neat stock over 18 months old; all sheep over 6 months old." Suppose we add, "and all deposits in savings banks if over one hundred dollars in amount." Then deposits under one hundred dollars in amount will stand like carriages under fifty dollars in value, horses, &c., under 18 months old; that is to say, they will be omitted from the list of property liable to taxation. Carriages under fifty dollars in value, horses under 18 months old, &c., are not liable to be taxed, and why? Because, being omitted from the list of taxable property, it was not intended that such property would bear the burden of taxation, and so, for the same reason, because they were omitted from the list of taxable property, deposits in savings banks under one hundred dollars in amount were not intended to be taxed, or to bear the burden of taxation, either directly in a tax assessed on the deposits, or indirectly in a tax assessed on the personal property of the corporation in the town where it is situated. Rev. Stat. ch. 39, sec. 3.

It is hardly necessary to remark that the law of 1861, which increased the amount of deposits required to be notified to assessors, can have no effect on the principle which will govern the interpretation of the act in this particular. That change can mean no more than that the legislature in their wisdom found it expedient to extend the benefit of the former repeal to deposits of a larger amount.

This question would seem to have been discussed as if all deposits in

savings banks were liable by some general law to taxation, and that, if they were not taxed to the depositors, it was necessary to follow them into the hands of the corporation and devise some way to reach them there in order to prevent them from evading legal taxation.   This is a mistaken view of the subject; for there was no law, when this tax was assessed, that made deposits under three hundred dollars in amount liable to be taxed at all; and to my mind it is quite clear, that, previous to the law of 1864, it was the legislative intention that such deposits should not directly or indirectly bear the burden of taxation any more than neat stock under 18 months old, or carriages not exceeding fifty dollars in value.   It is to be observed that the statute of 1864 follows the general policy of the law in making the money deposited in savings banks subject to a tax assessed for the benefit of the towns where the depositors reside, and gives no countenance to the manifest injustice of assessing a tax collected out of deposits belonging to the inhabitants of other towns for the benefit of the places where it happens that the banks have established their business and conduct their corporate agency for the depositors who are the beneficial owners of all the funds.

It is not easy to suggest any satisfactory reason why deposits invested in the stock of other corporations and yielding an income in the shape of dividends should be taxed to a savings bank any more than deposits invested in notes or other securities for money lent.   Six per cent. received for dividends on stock is substantially the same income as six per cent. received for interest, and the bank accounts to the depositors for both kinds of income in the same way.   It was accordingly held in the *Worcester Savings Bank* v. *Worcester*, 10 Cush. 128, that, in Massachusetts, savings banks are not taxable for bank stock, in which money received on deposits has been invested, on the ground that the money deposited was to be regarded as money at interest, and the bank paid interest on it to the depositors.   In Massachusetts the statutory provisions of the law on this subject are not, of course, identical with ours; but I can discover no difference which will prevent that case from being regarded as an authority in point.   *Metcalf, J.*, in delivering the opinion of the court refers to the Revised Statutes of Massachusetts, ch. 36, sec. 81, and ch. 7, sec. 4, for the law which governed the case.   Section 81 of ch. 36, provides that "the income or profit of all deposits shall be divided among the depositors or their legal representatives in just proportion," which agrees with the law in this State."   And section 4, of ch. 7, enumerates certain kinds of personal property, which are made subject to taxation, including "all money at interest due to the persons to be taxed more than they pay interest for, and stocks in turnpikes, bridges, and all moneyed corporations."   In that case the stock taxed was in a moneyed corporation, and made liable to be taxed by statute as such stocks are here, and there was no provision of the Massachusetts statutes that deposits in savings banks invested in such stocks should be regarded as money at interest, so that the dividends on the stock should be considered as so much interest received on a loan of money; yet the court held that the money invested in the stock was money at interest within the meaning of that statute, and that the stock

could not be taxed to the bank, because the bank accounted to the depositors for the income received on the stock as they did for interest on money lent.    And the law here as in Massachusetts requires all the income of the deposits to be accounted for to the depositors.    *Metcalf*, J., also says that the case could not be distinguished from that of banks and other corporations in Massachusetts, where the property of the corporation was taxed to the stockholders ; which must mean that the depositors are stockholders of the capital belonging to a savings bank within the meaning of the statute which speaks of stockholders in corporations.    So, in the *Savings Bank* v. *Gardner*, 4 R. I. 484, it was held that stock held by a savings bank in another corporation could not be taxed to the bank in the place where it was situated.

It is a fundamental principle in taxation that the same property shall not be subject to a double tax, payable by the same party either directly or indirectly, and where it is once decided that any kind or class of property is liable to be taxed under one provision of the statutes it has been held to follow as a legal conclusion that the legislature could not have intended the same property should be subject to another tax, though there may be general errors in the law, which would seem to imply that it was to be taxed a second time.    In *Smith* v. *Burley*, 9 N. H. 423, this rule of construction was applied to a case where the property of a corporation was taxable to the corporation in the town where it was situated, and the attempt was to collect a tax assessed on a stockholder in the town where he resided, under the provision of the statute which made stockholders in corporations liable to be taxed for their stock in the places where they resided.    The statute then in force provided that "all stock in any corporation or company on which any income was received or any dividend made," should be taxed to the owner in the town where he resided.    Statute of January 4, 1833.    It was held, notwithstanding these general terms making the stock taxable to the stockholder, that, inasmuch as the property of the corporation was legally taxed to the corporation under the law then in force, the stockholder could not be taxed for his stock in the place where he resided, because that would indirectly amount to a double taxation of the same property.    *Parker*, J., in delivering the opinion of the court says : "A taxation of the shares at their appraised value would in fact be a double taxation, once to the corporation itself and again to the corporators, which would be unjust, oppressive and *unconstitutional*.    It is clear, that, so far as deposits of three hundred dollars and upwards are concerned, the tax on the personal property of the corporation is a double tax, and the authority of *Smith* v. *Burley* is directly in point.

There are numerous other cases in which this rule that property shall not be held liable to double taxation has been recognized and applied. *Smith* v. *Exeter*, 37 N. H. 556 ; *American Bank* v. *Mumford*, 4 R. I. 482 ; *Savings Bank* v. *Gardner*, 4 R. I. 484 ; *Savings Bank* v. *Worcester*, 10 Cush. 128 ; *Glass Co.* v. *Boston*, 4 Met. 181, 183, 184 ; *Water Power Co.* v. *Boston*, 9 Met. 202 ; *Iron Factory* v. *Danvers*, 10 Mass. 514 ; *Factory Co.* v. *Gardner*, 5 Greenl. 133.

Several answers have been suggested to this objection of double tax-

ation in the present case.   It is said that the objection cannot avail be- . cause personal property stands in this respect on the same footing with land, and land is clearly taxable to the corporation in the town or place where it lies, and thus pays a double tax.   In the first place, if this were so, and land on account of its fixed character necessarily paid a double tax, one assessed on the deposits, and the other on the land itself, it would not follow that the injustice of a double taxation should be unnecessarily extended to personal property of the corporation.   But the law of this State is not guilty of imposing an unjust double tax on land owned by such corporations.   The depositors in savings banks are the beneficial owners of all the property held for them on a corporate trust by the banks.   They own the whole property and capital in shares proportioned to the amount of their respective deposits, as much as the shareholders or stockholders in any other corporation; and, under the statute, assessors are required when they tax the deposits, to deduct from the appraised value of the shares in the corporation "a just proportion. of the value of any estate of such corporation, which shall be legally taxed elsewhere, upon satisfactory evidence thereof under oath."   Rev. Stat. ch. 42, sec. 1.   I can ·have no doubt that this provision of the statute, to avoid the injustice of double taxation, was intended to reach, all cases, where by the general law the property of corporations is taxed to the beneficial owners, in the towns where they reside, and a part of the property, like land, is taxable to the corporation; and that on proper application it would have been the duty of the assessors in the present case to deduct the value of the land taxed to the corporation from the aggregate value of the deposits taxed to the depositors.

It has been argued that the annual payment of one per cent. on the capital of banks required to be paid to the literary fund is in substance a double tax.   But it is not·named nor assessed as a tax; it is a fixed sum paid yearly, and not varying in amount like other taxes, according as they are voted in different places and in different years; and has more the character of a bonus voluntarily paid for the right to exercise the privilege of banking than of an ordinary tax.

Then, again, it is contended that to double taxation is no legal objection, because land mortgaged is taxable to the mortgagor, while at the same time the mortgagee is taxable for the money secured on the land as for money at interest.   If this were in substance a double tax, it would only show that the statute has in this instance admitted an an-. omaly in conflict with the general policy of the law, which can only be excused on the ground, that, from the nature of the case, the injustice of double taxation cannot be avoided.   But in such a case there is in fact no double taxation of the same property.   Neither the land nor the money is twice taxed.   The mortgagor may be burdened with taxes disproportioned to his means; but it is not because he has mortgaged his land to secure payment of the money which he has the misfortune to owe.   His case in this respect would be no way improved if he had obtained the money on the personal security of his friends, or without any security at all.   If he pays more taxes than he can afford, it is one of the many inconveniences that belong to the condition of a man in debt,

and not because the money which he owes has been raised by a mortgage of his land.

Another answer made to the objection of double taxation is, that it does not appear by the case that this bank had any deposits of three hundred dollars and upwards in amount. It would be just as easy to say that it did not appear that they had any deposits under three hundred dollars in amount. It certainly could not have been the intention of the law to make the right of taxing personal property belonging to a corporation to depend on the amount of the respective deposits or shares. The question must be determined by some general rule, whether the personal property belonging to such institutions is liable to be taxed to the corporations in the towns where they are established. It could not have been intended that assessors should be required to overhaul the affairs of savings banks, and ascertain how large a proportion of their deposits were under or over three hundred dollars in amount, before they could decide whether they had by law the right to tax such property to the corporation.

The conclusion is that so much of the tax must be abated as was assessed on the stock in another corporation, and so much of it must stand as was assessed on the land in Nashua.

BELLOWS, J., dissenting :—

Not being able to concur in the opinion of my brethren, and deeming the question to be an important one, I have thought it proper to state the reasons which have led me to the views which I entertain.

The first inquiry is, whether, by the general law independent of any act of exemption, express or implied, savings banks are liable to be taxed for their property. And if so, whether there is any act which exempts them from taxation for either real or personal estate.

Upon the first question I understand the opinion of the majority of the court to be in effect, that the general law subjecting the owners of property to be taxed for it does not apply to savings banks, because the terms are not broad enough to embrace them. If this be so, it must be for reasons that would exclude from taxation all banks, and all other corporations, unless specially named; and this is a doctrine, I think, which is not only repugnant to the policy of our revenue laws, and the settled usage under them, but to the construction, both judicial and otherwise, which has been given here and elsewhere, to the terms used in those laws.

By the law in force when the taxes in question were assessed, Rev. St. ch. 40, sec. 1, it is provided that "every *person* shall be taxed in the town in which he is an inhabitant or resident on the first day of April, for his poll and estate," &c.

To the same effect was the law of 1812, providing that "all personal estate, and all buildings and real estate, shall be taxed to the person claiming the same, or to the person who is in possession and actual occupancy thereof," and sec. 7, ch. 40 Rev. St., is the same.

The question is, then, whether the term *person* in the Revised Statutes includes banking and other corporations. On this point it is ex-

pressly provided, in ch. 1, sec. 8 of the same Revised Statutes, that "the word *person* may extend and be applied to bodies politic and corporate, as well as to individuals.

Here, then, is an express authority for including corporations in the term *persons*. There may be cases where the term, taken in connection with other parts of the provision and the object of the law, should not be construed to embrace corporations,—as, for example, laws relating to marriage and divorce, and the like,—and hence, I presume the peculiar phraseology of this section of the Construction Act; but here no such objection can arise, for it is obviously the policy of our laws that all owners of taxable property should be taxed for it; and there is nothing I think to be found in our legislation that indicates any purpose to exempt corporations from their share of the public taxes; and this, I conceive, is one of those cases where the construction I contend for is eminently proper and just.

Besides it is clear from sec. 5 of the same ch. 40 of the Rev. St., that the Legislature understood that the term *persons* in the first section *did* include corporations, for it is enacted that "taxable property of manufacturing corporations in this State, and property taxable to any other corporation, shall be taxed to such corporation by its corporate name, in the town or place in which it is situate, except in cases where other provision is made," thus making provision for the mode of assessing corporations under the general law.

Again, this construction accords with the long continued practice under this and former laws; the revised statute being substantially the same as the law of 1812. It is admitted, indeed, in the opinion of the majority, that, in respect to real estate, savings banks and other corporations are properly taxable under the general law, and this is put upon the ground mainly, or altogether, of usage. That such has been the usage there can be no doubt, and I think it clear also, that it has been the usage to tax other property to such corporations unless otherwise specially provided.

If then, it has been long the usage to tax corporations for real estate, it must have been because it was understood that the term *persons* embraced corporations; and so we have a practical construction of this act. If therefore corporations are included in the term *persons* so as to be, rightfully taxed for real estate, I am unable to conceive any good ground for holding that the law should be otherwise construed in respect to personal estate.

Independent of our Construction Act, I think the term *persons* must include corporations. Under the laws of the United States, giving jurisdiction to the circuit courts in controversies between *citizens* of different States, corporations are, by express decisions of the highest judicial tribunals, included in the term *citizens*; or rather it is conclusively presumed that the persons incorporated are all citizens of the State incorporating them. *Marshall* v. *Baltimore & Ohio Railroad*, 16 Howard U. S. Rep. 325.

The provision of our law that the *person* shall be taxed in the town in which he is an inhabitant or resident, is much like the United States

law referred to, and should receive a similar construction; and as it is in the Revised Statutes provided that a corporation shall be taxed in the town or place in which it is situate, there can be no difficulty in applying it.

In Massachusetts, under a similar law providing that "all taxes on real estate shall be assessed in the town where the estate lies, to the person who shall be either the owner or in possession thereof on the first day of May, (Mass. Rev. Stat. ch. 7, sec. 7,) it is held that a bank is liable to be taxed for its real estate in the town where it lies." *Tremont Bank* v. *Boston*, 1 Cush. Rep. 142; so, in respect to other corporations; *Salem Iron Factory Co.* v. *Danvers*, 10 Mass. 514; *Goodell Man. Co.* v. *Trask*, 11 Pick. 514; and under a provision of the Massachusetts law that all personal estate shall be taxed to the owner in the city or town where he is an inhabitant, Rev. Stat. ch. 7, sec. 12, Gen. Stat. ch. 11, it is assumed in *Worcester County Savings Institution* v. *Worcester*, 10 Cush. 128, that the law subjecting money at interest to taxation applied to savings banks; although in that case the bank was held not liable because it had no money at interest more than it paid interest for.

These cases show that terms in the Massachusetts laws, similar to our own, have received in their courts the construction for which I contend; that is, to include corporations. Indeed I can find no adjudged case against this construction, nor has any been referred to. It is true, cases may be found holding that corporations are not liable to assessment in certain cases, upon the ground of double taxation, or some implied exemption, or other special cause, but never, so far as I can learn, upon the ground that they were not included in the term *persons*.

I am constrained, therefore, to hold that, under the general law, savings banks and other corporations are liable to be taxed for their real and personal estate, the same as natural persons, unless exempted or excused by some special provision; holding indeed, that such artificial persons, are included in the terms used as much as if the term *corporations* had been added. This I think is in accordance with our policy to tax all owners of taxable property, and also in accordance with the practical construction given to the law, and with the adjudged cases so far as any can be found.

Assuming, then, that savings banks are subject to be be taxed like natural persons under the general law, the inquiry arises whether there is any act which expressly, or by implication, exempts them from the taxes in question.

These taxes are assessed upon real estate and stock in the Pennichuck Waterworks, the property of the bank, and both kinds expressly made liable to be assessed, and as I understand it, the liability of the bank to be assessed for this property stands under the general law, precisely upon the same footing as in the case of natural persons—but it is urged by the counsel for the bank that the law providing for taxing the depositors when the amount is three hundred dollars and upwards, relieves the bank from all taxation for either the real or personal estate, upon the ground that the whole interest in the bank is in the depositors; and

that the taxation of the deposits is a taxation of the entire property of the bank; and therefore, that a taxation of the bank would be a double taxation, and illegal; and further, that an exemption of depositors, whose deposits are less in amount than three hundred dollars, is in effect an exemption of the bank to that extent.

This argument, I conceive, applies with equal and even greater force to banks of issue and all other corporations where the stock is held in shares, inasmuch as the position of *depositors* in savings banks has much less the character of ownership than that of *stockholders* in other corporations. In this point of view, the question becomes of grave importance, because, if the argument be sound, no corporation whose stock is taxable to the shareholders could legally be assessed for any property held by it, whether real or personal, at least such must be the logical result.

An illustration of the effect of such a doctrine may be found in the case of banks of issue, which by our law are required to pay one half of one per cent. upon their capital stock to constitute a literary fund, and this amount was nearly equal to the average tax upon other property when the law was made, (see Rev. Stat. ch. 75, sec. 1,) and yet stock in such banks was also subject to taxation in common with other property; Rev. Stat. ch. 39, sec. 3; and besides the real estate, and I think the visible personal property, of such banks have also been taxed to them; but if the doctrine adverted to be sound, these taxes, except those upon stockholders, must be regarded as double, and therefore illegal; and I cannot but fear that in many other respects this doctrine would be found seriously to trench upon the policy of our revenue laws.

It is very clear that our laws contemplated the taxation of corporations. This is manifested by the provisions of sec. 5, ch. 40, of the Revised Statutes, already quoted, determining where they should be taxed, and it applies not only to manufacturing and railroad corporations, but to other corporations for which no special provisions for taxing are made, notwithstanding their stock is held in shares, and subject to taxation; and yet if the doctrine in question is sound, the corporations, except such as are specially provided for, cannot be taxed at all.

Again, in the United States courts it is distinctly held that for the purpose of taxation, a bank, and the stockholders of a bank, are not one and the same, and therefore that one may be taxed or exempted from taxation, and yet the other be legally assessed. This doctrine was held in the case of the *First National Bank of Albany* v. *The Assessors of Albany*, decided in the Supreme Court of the United States, in May, 1866, where the capital, or a portion of it, was in United States bonds not liable to be taxed, and yet although the bank itself could not be taxed for the portion of the capital so held, it was decided that the stockholders were liable to be assessed to an amount not greater than is assessed on other moneyed capital in the State, nor to exceed the rate on shares of stock of State banks; and also that the amount is not subject to deduction on account of the portion of capital invested in government bonds.

This decision was put upon two grounds: First, that if it be admitted

that this was a tax upon the bonds or capital stock of the bank, it is still but a tax upon the new uses and new privileges conferred by the charter in the application of these bonds to the business of banking; and secondly, that "the tax on the shares is not a tax on the capital of the bank;" the court saying that "the corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own." And the court say that "this is familiar law and will be found in every work that may be opened on the subject of corporations;" and, as a striking exemplification of the doctrine, the case of the *Queen* v. *Arnoud*, 9 Adolph. & Ellis, N. S. 806, is cited. That case related to the registry of a ship owned by a corporation, and it was held per Lord Denman, that the stockholders were in no sense the owners of the ship, though they might derive a benefit from it; but that the corporation was the sole owner, and that the ship was entitled to registration although some of the stockholders were foreigners.

The doctrine of the *First National Bank of Albany* v. *The Albany Assessors*, is fully recognized in Ohio, in *Parker & al.* v *Liebern & al.*, the auditor and treasurer of Hamilton county, and *Frazier & al.* v. *Liebern & al.*, Am. Law Reg. July, 1866, p. 526; and these decisions were followed in our own State in *First National Bank* v. *Portsmouth*, Rockingham county, June, 1866.

The same general doctrine is maintained in the great case of *McCulloch* v. *The State of Maryland*, 4 Wheat. 316, where it was held that the State of Maryland could not constitutionally impose a tax upon the operations of a branch of the Bank of the United States. In giving the opinion of the court *Marshall, C. J.,* says: "This opinion does not deprive the States of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the State, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution in common with other property of the same description throughout the State. But this is a tax on the operations of the bank, and is, consequently, a tax on the operations of an instrument employed by the government of the Union to carry its powers into execution. Such a tax must be unconstitutional."

It is quite evident that the court here intend to announce the opinion that the State may rightfully tax stock in the Bank of the United States, and, of course, it must be upon the ground that a tax on the stockholders is not a tax on the bank itself. In *Wilson* v. *The City of Charlestown*, 2 Peters U. S. Rep. 449, 469, which confirms the case of *McCulloch* v. *The State of Maryland*, it is evidently understood by the court as having been settled in that case, that such stockholders may be taxed by a State.

These cases show, I think, very clearly, that a tax upon the shareholders in a bank of circulation is not a tax upon the bank itself, or its capital, and that the exemption of one does not exempt the other. If

the doctrine of the majority of the court in the case before us is estab-
lished, viz., that a tax upon the depositors in a savings bank is equiva-
lent to a tax upon the bank itself, or that if the depositors are exempted
from taxation, then the bank must also be exempted, it follows legiti-
mately that if the bank itself is by law exempt, the depositors must be
also, because by that doctrine they are substantially identical.

We have seen, however, that this view is distinctly rejected in the
case cited in the United States court, and followed in Ohio, and also in
our own State.   This decision applies to a bank of circulation, and it
may be useful to consider for a moment, whether there is any difference
between such banks and savings banks, that can affect the question.

As to banks of issue having a capital divided into shares, the entire
beneficial interest is in the stockholders, and upon the winding up of
their affairs all the assets, after paying their liabilities and expenses, are
divided among the shares into which the capital was divided.   It is not
so, however, with savings banks, for the deposits are made to suit the
convenience of the depositors who acquire no permanent interest in the
assets, but are entitled to withdraw their deposits at any time, with such
interest as the bank stipulates to pay ; and when that is paid, the de-
positor has no further claim upon the bank.   It is, indeed, much the
same as deposits with a bank of circulation, which by law they may re-
ceive upon such terms as they may see fit to make; or a deposit with
an individual.   In these cases the depositor has an interest that the in-
dividual or bank has assets sufficient to pay, but he has no further inter-
est in those assets, and so it is with a savings bank.

It is true in respect to savings banks that the money deposited is to
be managed to the best advantage for the benefit of the depositors, and
the net income paid and distributed among them in just proportions,
agreeably to such reasonable rules and by-laws as may be established by
such banks ; and the deposits may be withdrawn at such reasonable
times and manner as the bank by its by-laws may appoint, or according
to such lawful conditions and limitations as the depositors, agreeably to
the regulations of the bank, may have prescribed and annexed to their
deposits.

Under these provisions rules are prescribed which entitle the deposi-
tor to a certain fixed rate of interest if they remain a certain length of
time, otherwise no interest is paid.   If they remain a longer time, in
some cases five years, and until the return of fixed periods, they will be
entitled to a share of the accumulated earnings beyond the stipulated
interest of four or five per cent. as the case may be ; thus, in fact,
making the terms of deposit a matter of contract between the bank and
the depositor which may be enforced by the depositor by suit against the
bank, the same as against an individual, or a bank of issue where de-
posits have been made.

So far, then, as the savings banks differ from national and other
banks of issue, in respect to which the United States courts hold that
taxing the stockholders is not taxing the bank, it is apparent from this
review that the doctrine of those courts applies with much more force
to savings banks; and I am clearly of the opinion that these corpora-

tions, and not the depositors, must, for the purposes of taxation, be re-garded as the owners of both the real and personal property acquired by them.

By the deposit of money the depositor acquires no title or interest in the assets of the bank beyond what every creditor has in the assets of the debtor upon which his security depends; and in a suit brought by him to enforce the contract, the bank, I think, cannot plead that it has no assets, but must submit to a judgment which the depositor may en-force by levy of execution, or process of foreign attachment upon all the real and personal property of the bank, including debts due to it, and stocks in other corporations.

Indeed, the claim of the depositor has all the characteristics of money at interest, as much as if the deposit was with the individual, or in a bank of issue.    It is true that provision is made for placing an injunc-tion upon an insolvent savings bank, and winding it up, and making a *pro rata* distribution of its assets among the depositors,—and so it is with other banks,—but yet so long as no such proceeding is instituted by the bank commissioners, savings banks are liable on their contracts with depositors like other banks and individuals, to the extent of their means.

Again, savings banks are empowered to hold real estate for the con--venient management of their affairs, and also such as may be conveyed to them in good faith for the payment of debts; so they may doubtless reserve and hold a reasonable part of the profits or income of the de-posits, to meet the contingencies that are liable to happen in such busi-ness, and may, of course, apply a portion of such profits to the pur-chase of the necessary offices or other real estate needed for the busi-ness.    In respect to such property and all other, savings banks must be regarded as the owners, and especially must it be so for the purpose of taxation, it being clearly the policy of our laws to tax the property to the apparent owner having it in possession, without being embarrassed by any nice question of title.

Upon these views I am of the opinion that the taxation or exemption of depositors does not affect the liability of the bank.    There might be cases where the provisions of the law imposing a tax-upon all the prop-erty of a corporation might be such as to afford a fair implication that no tax upon the stockholders was intended, but I think no such infer-ence can be made here.

I am aware that there are decisions in this State which hold a some-what different doctrine in respect to a distinction between a corporation and its stockholders; they are *Smith* v. *Burley*, 9 N. H. 427, and *Smith* v. *The Town of Exeter*, 37 N. H. 566; but to them I answer first, that the doctrine of those cases must be regarded as modified and limited by the recent decision in *First National Bank* v. *Portsmouth*, following the decision in the Supreme Court of the United States before cited; and, secondly, that they applied only to corporations where the capital is owned in shares, and could not extend to savings banks, and after the recent decisions referred to would not be extended.

The law is explicit that all real estate and stocks in corporations shall be taxed to the owner; and it is equally explicit in respect to stocks as

in respect to real estate; and corporations, under the general law, stand upon the same footing as other owners of property, and, for aught I can see, the liability of corporations to be taxed for real estate and stocks is as clear as if they had been specially named.

What, then, is there to relieve savings banks from being taxed for this property? As to the real estate it is admitted by my brethren that the bank is rightfully taxed. If so, why is not the stock also taxable? Both are made subject to be taxed by the same law and in the same terms. The provision which includes corporations applies as much to stocks as to real estate; and so if there was taxation of the whole property in another form, that is, by taxation of the depositors, or an exemption in favor of the depositors, it applies equally to both real estate and stocks, for no distinction is made, or sought to be made, between them.

As I understand it, the exemption is sought to be implied from the law of July, 1861, requiring the treasurers of savings banks to give notice to assessors of the several towns of all deposits of three hundred dollars and upwards; from which it is inferred that smaller deposits are to be exempt from taxation; and it is therefore urged that as provision is made for all the deposits by taxing part to the depositors, and exempting the remainder, there is an implied exemption of the bank on the ground that the provisions in respect to the depositors cover the whole property. If this were so, real estate should for the same reason be exempt, inasmuch as it is obtained by the same means as the stocks. Upon the grounds already stated, however, I think neither is exempt, nor do I think there was any purpose manifested in the act requiring notice to be given of deposits, to affect the liability of the savings banks to taxation in any way whatever. Originally savings banks were taxed for the real estate and visible personal property to which they held the legal title; and they were also taxable for money at interest more than they paid interest for.

On the other hand depositors were taxable for their deposits unless they paid interest upon an equal amount, or at least were liable to do so, although it is more than probable that a large portion escaped altogether. This is shown, indeed, by the law of 1853, ch. 1419, which provided that if any person with intent to avoid taxation shall deposit money in any savings bank under a false name or false residence he shall be subject to pay taxes on three times the amount of money so deposited for the use of the town in which he resides.

The law requiring these returns of deposits was, as in the case of other banks, designed chiefly to aid the assessors in reaching them, and I can see no evidence of any purpose to interfere with the taxation of the real estate and other visible property to the bank. The policy of the law always had been, and still is, to tax the visible property wherever it was found. It is admitted that it was the usage to tax the real estate to the bank, and the same law applied equally to other visible property. If the legislature had intended so great a departure from the settled policy as to relieve such property from taxation in this case, that intention would, I think, have been expressed explicitly, and the con-

tinued taxation of the real estate, and, as I believe of personal estate, tends to confirm the view I have taken; and so, also, the taxation of the real estate to such banks before any law exempting depositors, and when they were liable to be taxed for the full amount, tends strongly to confirm the view which I have taken.

In respect to the suggestion that there would be double taxation if this view is taken, it is to be considered that there is little reason to suppose that there would be anything like a *single* tax on all the property, even if the bank and the depositors were regarded as the same; inasmuch as the amount of individual deposits in most instances would not exceed the sum exempted; and, by the rules of some of the banks, as the Portsmouth Savings Bank for instance, they *could* not exceed it. In fact, in the case before us, there is no evidence that any deposit exceeds the sum of three hundred dollars. Under these circumstances, therefore, the legislature might well conclude that, with a tax upon all the visible property to the bank, and upon all sums of three hundred dollars and over to the depositors, much of the property would still be exempt.

As before remarked, the policy of our law has been to tax all real estate and the enumerated personal property, which includes most of that which is visible, to the apparent owner, and in respect to all but money at interest, no deduction is made because of debts owing by such owner, the purpose evidently being to subject all the visible and tangible property in the State to taxation without regard to the condition of the owner, and with as little embarrassment as possible from questions of title. In all countries one of the greatest obstacles in the way of a fair and equal execution of the revenue laws, arises from the habit of concealing property, which is not visible, from the assessor; and therefore it is that the chief reliance is placed upon that species of property which is visible and tangible, and in that class must be included stocks in corporations.

To justify the omission to tax such property the intention of the legislature ought to be pretty clearly manifested. In the case of individuals it is no excuse that his property, whether real or personal, is mortgaged to secure the price, and that the mortgage debt is taxed. It has never been the law, although often urged upon the ground of double taxation; and it is now settled by express legislation that such property is liable as well as the mortgage debt. So it must be in respect to corporations, and so it must be here, even although the savings bank might owe a depositor for the money used to buy this stock and real estate, that makes no difference with either individuals or corporations. The bank here has the legal and equitable title to this stock. It stands in its name. Under the general law it is, I think, liable to be taxed to the corporation as clearly as farming stock is to the farmer who owns it. It is clearly the policy of the law to tax it to the party in whose name the stocks stand, and courts, I think, should be slow to infer such a change as is proposed, from doubtful provisions.

It has been said that the policy of our law is to tax personal estate in the town where the owner lives, and that this makes a distinction be-

tween the real estate and the stock in the Pennichuck Water Works. But I think there is no policy of such character as to have any weight upon the decision of this question.    As to corporate property it is sometimes taxed in shares mainly, and in the towns where the shares are held, but in the case of manufacturing corporations, the capital of which is far greater than all others, the whole property, including real estate, manufacturing and other personal property, is by law of 1825, to be taxed in the towns where they are located; and this was done after much discussion of the principle.    See *Smith* v. *Burley*, 9 N. H. 423. This principle has also been extended to all stock in trade, all animals, all wood, bark, timber, logs and lumber manufactured or otherwise, and all fishing vessels connected with any trade or business at any port or harbor.

These provisions are evidently designed to insure the taxation of property which might otherwise escape.    Neither are railroads taxed to the stockholders, although a part of the tax, when collected, is distributed among the towns where the shareholders live.    This review shows that as to corporations there is no general policy to tax corporate property in the towns where the stockholders reside.

Upon these views I am reluctantly compelled to dissent from my brethren in their opinion that the tax upon the stock in the Pennichuck Water Works was illegal.