CHIEF JUSTICE WILLIAMS
delivered the opinion oe the court:
Charles Miller, a free man of color, previous to the year 1859, made his will, by which he devised to his two free sons two certain lots in Louisville, giving bis wife a life estate in one of them, and to her and said two sons his household and kitchen furniture; he made no disposition of his other personal estate. He requested his two free sons, if they should see proper, to buy and emancipate his slave son Henry, then belonging to Isaac Sturgeon, of St. Louis.
In the year 1859 he sold the Broadway lot, devised as aforesaid, at one thousand four hundred dollars, on seven equal annual payments. Before his death he had collected and mixed with his personal estate all but the last payment. Sturgeon had also emancipated Henry before the. testator’s death, in the fall of 1865, and the testator *484 had also purchased the lease of a lot and house thereon after the will was published.
Sturgeon, the executor, filed this petition to have the respective rights of the legatees and heirs settled, and for distribution. The court adjudged the Green street lot to the appellees, encumbered with the widow’s life estate, and an equal share of the furniture and the one thousand four hundred dollars, proceeds of the Broadway lot, but adjudged that, as to the lease of the lot and the house and the othet personalty, the testator died intestate, and divided these equally between the three sons and the -widow, without reference to the devises. Of this Henry complains, insisting that he is entitled to an equal share of all.
By section 17, chapter 30, 1 Stanton’s Revised Statutes, 426, it is provided, in case “ any real or personal property or money, given or devised by a parent or grand-parent to a descendant, shall be charged to the descendant, or those claiming through him, in the division and distribution of the undevised estate of the parent or grand-parent; and the party shall receive nothing further therefrom until the other descendants are made propoi’tionately equal with him, according to his descendable and distributable share of the whole estate.’'
As Henry, though a slave, and incapable of taking at the publication of the will, was emancipated and enfranchised at the testator’s death, he had a descendable and distributable interest equal to his brothers; and, therefore, he should have been equalized, out of the undisposed of personal estate, with them, before they should be allowed any part thereof. In other words, the really and personalty devised to them should be estimated, and then Henry should be allowed as much out of the distributable personalty before they should participate in it. *485 But they may claim the one thousand four hundred dollars, proceeds of the lot, under section 1, article 3, chapter 46, 2 Stanton’s Revised Statutes, 2, which provides that the conversion, in whole or part, of money or property, or the proceeds of property devised to one of the testator’s heirs, into other property or thing, with or without the assent of the testator, shall not be an ademption of the legacy or devise, unless the testator so intended ; but the devisee shall have and receive the value of such devise, unless a contrary intention, on the part of the testator, appeared from the will, or by parol or other evidence.”
As was held by this court in Wickliffe’s ex’rs vs. Preston (4 Met., 178), this statute embraces devises of real as well as personal estate, and the ademption will not be presumed, but must appear. In this case, however, it does appear that the testator collected and used and confounded the proceeds with his other personalty, so far as collected, from which an ademption must be presumed; and, therefore, the entire proceeds of the Broadway lot should be regarded as a part of his distributable personal estate; and before either of the appellees or widow should be permitted to participate therein, Henry should be allowed his full distributable share as though his father had died intestate.
As this will likely do ample justice to Henry, it is not essential that we should decide whether he should be regarded as within the saving spirit and intendment of section 25, chapter 106, 2 Stanton’s Revised Statutes, 464, because of his civil birth and enfranchisement subsequent to the will, and before his father’s death, and, consequently, within the reason and equity of the statute.
Wherefore, the judgment is reversed, with directions for further proceedings consistent herewith.