## AGNES B. BRAY *vs.* ANNIE HICKMAN.

## LOUIS ALTMAN *vs.* SAME.

Suffolk.    December 9, 1927. — May 24, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Contract,* Validity, Construction, Performance and breach, Of sale, Implied.
*Broker,* Commission. *Practice, Civil,* Question to jury; Exceptions;
Requests, rulings and instructions; Charge to jury; Ordering verdict;
Verdict. *Rules of Court.*

A contract in writing between the owner of certain real estate and a pro-
spective purchaser was in substance as follows: "I, [the owner] . . .
agree to sell the land with the five story brick building [described] . . .
including the furniture and furnishings now on said premises (Excepting
that belonging to tenants) to [the purchaser] . . . for the sum of
$30,000 subject to a first mortgage of $15,000 and a second mortgage
to be held by [the owner] . . . in the sum of $9000, paying $1000 and
interest at the rate of six percent per annum on the second mortgage
until payment in full is made.   In consideration of the above transac-
tion, [the purchaser] . . . agrees to pay $6000 of which $500 is to be
paid at the time of signing this agreement.   $5500 is to be paid at the
time of taking title."   The time for conveyance was fixed and the owner
agreed to pay a broker's commission of a certain amount. *Held,* that
     (1) The agreement, while informal and obscure, was not unintelligible
nor too vague or indefinite for enforcement; it constituted a valid con-
tract;
     (2) Rightly construed, the contract provided that the second mort-
gage was to be given by the purchaser and was to cover all the property
of every nature to be transferred pursuant to the agreement;
     (3) The contract fairly construed meant that a note was to be given
by the purchaser for $9,000 for which the second mortgage was to be
security;
     (4) By the contract, payment of the second mortgage was to be at
the rate of $1,000 each year until the principal should be paid in full,
with interest at the rate of six per cent;
     (5) The statement in the agreement of the entire purchase price as
$30,000, a part of which was made up of the first mortgage of $15,000,
subject to which the sale was to be made, sufficiently imported that the
buyer was to assume and pay and save the seller harmless on that
mortgage.
It is an elementary rule in the construction of contracts that whenever
     practicable every word used by the parties shall be given some effect.
No reversible error is committed by a judge in submitting to a jury a
     special question relating to the interpretation which should be put upon

a contract in writing, or in instructing the jury with reference thereto, if the jury's answer to the question gives the correct interpretation.

Where a bill of exceptions, with respect to certain requests by the defendant for rulings, recites that the judge "refused so to rule and the defendant seasonably excepted, as appears at the close of the . . . charge, which exceptions and charge are made a part of this bill," and, from a reference to the record at the close of the charge, it appears that, after certain exceptions were saved to portions of the charge, the judge said that counsel must then "take any exceptions to your requests that you may wish," and it appears that no such exceptions were saved, *it seems* that no exceptions to a refusal to give the requests were open to the defendant in this court.

Common Law Rule 44 of the Superior Court (1923) makes it impossible to raise the question, whether a verdict should be ordered on any one of several counts in a declaration, by a request for a ruling or for an instruction to the jury to that effect.

A declaration by a real estate broker against the owner of certain real estate contained two counts. The first count was founded on a contract for a definite sum for a broker's commission. The second count was for the same sum on an account annexed. There was evidence showing the existence and the performance of an express contract as set out in the first count. The verdict was general and was for the amount claimed as commission and interest. *Held,* that the verdict might be supported on either count.

Two ACTIONS OF CONTRACT, described in the opinion, the first, begun in the Municipal Court of the City of Boston by writ dated March 2, 1923, and afterwards removed to the Superior Court; and the second by Louis Altman, doing business under the name Commonwealth Realty Company, begun in the Superior Court by writ dated March 30, 1923.

The declarations are described in the opinion. In the second action, the plaintiff sought a commission of $750. The actions were tried together in the Superior Court before *Qua,* J. Material evidence and motions by the defendant, denied by the judge, are described in the opinion.

In the first action, the defendant excepted to a refusal by the judge to give the following rulings:

"2. Exhibit 1 and 1a, the contract upon which the plaintiff relies, is too indefinite and uncertain to support this action."

"7. The note and mortgage offered in evidence by the plaintiff was insufficient as matter of law as a tender of performance.

"8. The note offered in evidence by the plaintiff, as the note secured by the mortgage offered in evidence, not re-

ferring to personal estate included in said mortgage, does not carry with it a mortgage of the personal estate as security."

Rulings refused in the second action are described in the opinion.

In both actions the jury answered, among others, the following special questions:

1. Was there in fact a meeting of minds of the parties as to what property should be included in the $9,000 mortgage to be given by Mrs. Bray to Mrs. Hickman? The jury answered: Yes.

2. If the jury's answer to question No. 1 is "Yes," then state what property the parties understood should be included in said mortgage? The jury answered: Real estate, furniture and furnishings belonging to Hickman.

3. Was Mrs. Bray in fact ready and willing to give Mrs. Hickman a $9,000 mortgage in accordance with the terms of the written agreement, Exhibit 1, which mortgage should include the furniture and furnishings as well as the real estate? The jury answered: Yes.

4. If the jury's answer to question No. 3 is "Yes," then did Mrs. Bray or her attorney communicate to Mrs. Hickman or her attorney her willingness to give a mortgage which should include the furniture and furnishings as well as the real estate a sufficient time before March 1 to enable Mrs. Hickman to be ready to carry out the contract on that day? The jury answered: Yes.

Verdicts were returned on June 4, 1926, for the plaintiff in the first action in the sum of $1,195, and for the plaintiff in the second action in the sum of $896.25. The defendant alleged exceptions.

*J. H. Kenney*, for the defendant.

*M. C. Kelleher*, (*S. Rosenberg* with him,) for Altman.

*W. B. Sullivan, Jr.*, for Bray.

RUGG, C.J. These are two actions of contract, tried together; the first, by Mrs. Bray to recover damages for breach of an agreement by the defendant to sell land, furniture and furnishings; the second, by Altman to recover a broker's commission in securing Mrs. Bray as purchaser of the same property. The jury returned a verdict for the

plaintiff in each case and answered in favor of the contentions of each plaintiff certain questions put by the court. Exceptions by the defendant bring the cases here.

An "Agreement for Sale" in writing and under seal was signed by the plaintiff Bray and the defendant, the material parts of which were in these words: "I, Annie Hickman, of Boston, Massachusetts, County of Suffolk, agree to sell the land with the five story brick building situated thereon, now numbered 121 Beacon Street, in the City of Boston and Commonwealth of Massachusetts, including the furniture and furnishings now on said premises (Excepting that belonging to tenants) to Agnes B. Bray of Boston, Massachusetts, County of Suffolk, for the sum of thirty thousand ($30,000) Dollars, subject to a first mortgage of fifteen thousand ($15,000) Dollars, and a second mortgage to be held by Mrs. Hickman in the sum of Nine thousand ($9000) Dollars, paying One Thousand ($1000) Dollars and interest at the rate of six (6%) percent per annum on the second mortgage until payment in full is made.

"In consideration of the above transaction, Agnes B. Bray agrees to pay six thousand ($6000) Dollars of which five hundred ($500) Dollars is to be paid at the time of signing this agreement. Fifty-five hundred ($5500) Dollars is to be paid at the time of taking title.

"Title to this property is to be had on or before the first day of March, nineteen hundred and twenty-three.

"Annie Hickman agrees to pay a broker's commission of two and ½ (2-½) percent to the Commonwealth Realty Company of Boston, as brokers in this sale."

In our opinion this agreement is not too vague and indefinite for enforcement, but constitutes a valid contract. It is informal. It is obscure. It is difficult of satisfactory construction. The parties appear to have been in dispute as to its meaning. But it is not unintelligible. It is susceptible of interpretation. So far as reasonably practicable it should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties. The time for performance is specified. The obligation assumed by the defendant as

set out in the first paragraph is definite as to the property to be sold, the person to whom it is to be sold, and the price for which it is to be sold. The item as to the second mortgage is one source of controversy. The property to be sold is described with exactness as specified "land with the . . . building situated thereon . . . , including the furniture and furnishings now on said premises . . . ." It is that property which is to be sold subject to a first mortgage and "a second mortgage to be held by" the defendant. There is no stipulation in the agreement that such second mortgage is to cover the real estate alone, or the personal property alone. The parties have failed in the agreement to exempt any part of the property to be sold from being "subject to . . . a second mortgage." Therefore the natural as well as the grammatical construction of the agreement is that all the property to be sold, both real and personal, is thus to be made "subject to . . . a second mortgage." The circumstance that the first mortgage, to which also the conveyance was to be made subject, appears on the evidence to have covered the real estate alone, is of no consequence in this connection. That was an existing and outstanding mortgage. The agreement does not undertake to vary its terms. It does not define with exactness the property covered by that mortgage further than to say that the sale of "the land with the . . . building . . . including the furniture and furnishings" is to be "subject to a first mortgage . . . ." That means only that whatever property is covered thereby is subject to that mortgage. But there is no implication that the second mortgage is to cover only the same property included in the outstanding first mortgage and no other property. The second mortgage was not in existence but was to be executed as a part of the price to be paid for the sale. That is apparent from the fact that the defendant was the owner and vendor of all the property. She could not then hold a second mortgage on her own property. Both parties to the agreement understood that the defendant was, as shown by their conduct and all the circumstances, the owner and vendor of all the property, and that the second mortgage was not then in existence but was to be executed by the vendee as a

part of the sale. It follows that the agreement rightly construed provides that the second mortgage was to be given by the purchaser and was to cover all the property of every nature to be transferred pursuant to the agreement.

The agreement fairly construed also means that a note by the purchaser was to be given for $9,000, for which the second mortgage was to be security. The agreement, in view of all its terms, means that a note and mortgage are to be given. This appears to have been the construction put upon it by the parties. No dispute arose between them on that point. That is entitled to some weight. *Southborough* v. *Boston & Worcester Street Railway,* 250 Mass. 234, 239, and cases collected. The agreement as to the time of payment of the second mortgage is clumsily phrased but its meaning can be understood. It signifies that the payment is to be at the rate of $1,000 each year until the principal shall be paid in full, with interest at the rate of six per cent. The words "per annum on the second mortgage until payment in full is made" modify "paying" $1,000 and "interest" at the stated rate. This construction gives force to all the words used by the parties. That rule of construction ought to be followed whenever possible. It is to be presumed that parties in executing a written contract employed all their words with a purpose and with the design that every word be given its appropriate meaning. It is an elementary rule in the construction of contracts that whenever practicable every word used by the parties shall be given some effect. *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336, 343. *Koshland* v. *Columbia Ins. Co.* 237 Mass. 467. To construe the agreement as meaning something else, or as failing to express this meaning, would require us to attribute no effect to several words and to treat them as surplusage. That would be contrary to sound principles of law as to the interpretation of written instruments.

The statement in the agreement of the entire purchase price as $30,000, a part of which is made up of the first mortgage of $15,000, subject to which the sale is to be made, sufficiently imports that the buyer was to assume and pay and save the seller harmless on that mortgage. In no other

way can the vendee pay the whole of the named purchase price. *Jager* v. *Vollinger,* 174 Mass. 521. *Fiske* v. *Tolman,* 124 Mass. 254.

The second paragraph of the agreement deals only with the cash payment to be made by the buyer. But she could reach the point of cash payment only after making provision, by assuming the first mortgage and executing and delivering the second mortgage, for the payment of the balance of the purchase price. The agreement of the defendant to sell ran to the plaintiff Bray alone. The entire instrument imports, therefore, an agreement on the part of the plaintiff Bray to pay the purchase price as therein specified, partly in mortgage and partly in cash. That the plaintiff Bray was ready and willing seasonably to carry out the agreement for purchase on these terms has been expressly found by the jury upon sufficient evidence. The bringing of this action by her is an adoption of this interpretation of the agreement.

The submission to the jury of the question whether the minds of the parties met on the point that the second mortgage was to cover both the real and personal property, although unnecessary in view of our interpretation of the contract, presents no reversible error. We do not need to decide whether the instructions on this point were erroneous. The finding of the jury was to the effect that, on the evidence outside the contract, the minds of the parties met in harmony on the proposition that the second mortgage was to include all the real estate, furniture and furnishings sold. That is what the written contract means according to our interpretation. Hence, the defendant suffered no harm.

The instructions with reference to conversations and correspondence between the attorneys for the respective parties bore upon the question whether the plaintiff Bray was ready and willing to execute the second mortgage on all the property transferred. They were correct in that particular. If the charge on this matter is open to the possible construction that the conversations and correspondence bore upon the meaning of the contract, that was error harmless to the substantial rights of the defendant.

The instructions as to the readiness and willingness of the

plaintiff Bray to perform her part of the agreement and as to formal tender were correct and adapted to the evidence. They amply covered the subject matter of requests 7 and 8, which, in view of the charge and the evidence, were refused rightly. The motion for a directed verdict and the second request for ruling were also denied rightly.

The action by Altman against the defendant is to recover a broker's commission with respect to the sale of this same property. The defendant presented a motion for a directed verdict, which was denied and exception duly saved. Numerous requests for rulings also were presented. Respecting these requests for rulings, it is said in the exceptions that the judge "refused so to rule and the defendant seasonably excepted, as appears at the close of the . . . charge, which exceptions and charge are made a part of this bill." Referring to the record at the close of the charge, it appears that, after certain exceptions were saved to portions of the charge, the judge said that counsel must then "take any exceptions to your requests that you may wish." Exceptions then were saved to the refusal to give certain specified requests in the Bray case, but no exceptions were saved to refusal to give requests in the Altman case. Seemingly no exceptions to the refusals to give requests are open in the Altman case. There is no merit in any of these requests and we prefer to put the decision on that ground. *Ogden* v. *Aspinwall*, 220 Mass. 100, 103. The first and second requests for rulings thus presented were for a directed verdict. These cannot be considered. That result can be sought only by motion for directed verdict. The third request was to the effect that the plaintiff could not recover on the first count of his declaration, and the fourth request, that he could not recover on the second count of his declaration. Whether a ruling of that nature must be presented by a request for instructions or by a motion for a directed verdict has never been decided. It is provided by Common Law Rule 44 of the Superior Court (1923) that "The question whether the court should order a verdict must be raised by a motion. Such question shall not be raised by a request for instructions to the jury." Where several counts rightly are

joined in a single declaration, it is common practice to speak of the decision of the jury on each count as their verdict. In such cases, where the issues permit, the verdict may be a general one, covering all the counts; or, where the issues require, there may be a separate verdict on each count. The decision of the jury as to each of such several counts is a verdict. There are many instances in judgments of this court where such decisions by the jury have been called verdicts. The same is true of separate issues submitted to a jury. *Lovejoy* v. *Whitcomb*, 174 Mass. 586. *Leverone* v. *Arancio*, 179 Mass. 439, 448. *Hagar* v. *Norton*, 188 Mass. 47, 51. *Gorham* v. *Moor*, 197 Mass. 522, 526. *Dulligan* v. *Barber Asphalt Paving Co.* 201 Mass. 227, 233. *Simmons* v. *Fish*, 210 Mass. 563, 567. *Romana* v. *Boston Elevated Railway*, 226 Mass. 532, 536.

We are of opinion that the words of said Rule 44 comprise cases where a party desires a ruling for a directed verdict as to each of several counts or issues, as well as cases where only a ruling directing a general verdict is sought. The grounds of decision in *Carp* v. *Kaplan*, 251 Mass. 225, and in the numerous adjudications following it, are as applicable to the one kind of case as to the other. Consequently questions of law attempted to be raised in this case by these requests cannot be considered because not presented in conformity to the valid rule of court.

There was evidence tending to show that the plaintiff was employed by the defendant as a broker to find a customer ready, able and willing to buy the property on terms satisfactory to the defendant. There was evidence of a contrary nature to the effect that a commission was to be paid only in the event that the sale was actually carried through. The evidence was sharply conflicting on the point, whether the purchaser procured by the plaintiff Altman was ready and willing to carry out the agreement according to its terms as we have construed it. Perhaps the defendant might reasonably have expected a verdict in her favor on the ground that the purchaser persisted until too late in an erroneous construction of the contract with respect to including the personal property in the second mortgage. The judge gave full

and accurate instructions covering particularly this point as well as every other phase of the case. The verdict of the jury upon conflicting testimony has settled these issues in favor of the plaintiff.

It is not necessary to go through the requests for rulings one by one. Some were not correct statements of the law, others were not relevant to the issues, and others related to isolated parts of the testimony; hence all were denied rightly.

The exceptions to the charge show no error. So far as they relate to the conduct of an attorney for the defendant, in his communications with representatives of the plaintiff, they were not incorrect. The charge was fair and left the whole matter to the jury.

There was no error in the charge touching the recovery of reasonable compensation, if the express contract was not proved. While the evidence on the point was tenuous, it cannot be said that there was none to support the contentions of this plaintiff, and the charge was correct in this respect.

The first count in the Altman declaration was founded on a contract for a definite sum for a broker's commission. The second count was for the same sum on an account annexed. There was evidence to support the first count. If that contract was fully performed by the plaintiff, recovery might be had on the second count. If there was no express contract and the plaintiff was entitled to recover the fair value of his services, recovery could be had on the second count. *Stuart* v. *Clark*, 259 Mass. 383. The verdict was a general one and may be supported on either count.

Some of the questions argued in the Altman case have been disposed of by what has been said in the Bray case.

In the Altman case, the motion for a directed verdict was denied rightly, the requests for rulings so far as validly presented and argued were refused correctly, and the exceptions to the charge disclose no reversible error.

*Exceptions overruled in each case.*