J. ABRAMS AND COMPANY, INC. *vs.* CHARLES F. CLARK & another.

Franklin.    September 22, 1937. — December 1, 1937.

Present: FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Payment. Volunteer. Agency,* Ratification. *Joint Enterprise.*

Where a bailee of goods of two engaged in a joint enterprise, knowing that one of the joint adventurers had a prior right to the goods and that the other had no authority to transfer title to them as security for loans made to him personally by the bailee, took such a transfer and then detained the goods under claim of such title for the purpose of compelling the first joint adventurer to repay such loans, money paid to the bailee under such compulsion could be recovered in equity by the first joint adventurer.

A payment made to release property from a tortious detention was not a voluntary payment.

A payment by one party in a joint enterprise, made to secure a release of goods from a tortious detention thereof based upon an alleged sale by the other party in the joint enterprise, was not a ratification of the purported sale.

There was no obligation upon one joint adventurer to repay to a third
party loans made by him to the other joint adventurer personally,
even though part of the money so lent was thereafter used by the
borrower for purposes of the joint enterprise.

No demand was necessary before bringing suit to recover a payment made
by the plaintiff to release his goods from a tortious detention by the
defendant.

BILL IN EQUITY, filed in the Superior Court on April 23,
1931.

A final decree was entered by order of *T. J. Hammond*, J.
The defendants appealed.

*C. Fairhurst*, for the defendants.

*M. J. Levy*, for the plaintiff.

QUA, J.   This suit is now prosecuted against Charles
F. Clark and Clarence F. Clark, copartners, to recover back
a payment of $2,080.75 made by the plaintiff to the defend-
ants in order to secure the release from the defendants'
storehouse in Sunderland of one thousand bags of "set"
onions in which the plaintiff had an interest.

A summary of a part of the master's findings will serve
to indicate the decisive issue and the grounds of this opinion.
On August 23, 1928, the plaintiff, doing business as a com-
mission and produce merchant in New York, entered into
a written contract with one Goodwyn by which the plain-
tiff and Goodwyn were to engage in the enterprise of buy-
ing and selling onions on joint account, the parties to share
equally in the profit or loss, and the plaintiff to supply
capital as needed and to have a first lien on the onions for
its advances.   Onions were purchased, and about twenty-
five car loads were stored in the defendants' warehouse,
which was not a public warehouse, "in the joint account
name" of the plaintiff and Goodwyn.   During the period
while the onions were being purchased the defendants made
advances to Goodwyn personally, of which on October 17
the sum of $2,050 remained unpaid.   On that day, for the
purpose of giving the defendants security for this balance,
Goodwyn delivered to the defendants a memorandum of
sale of the one thousand bags of "set" onions hereinbefore
mentioned for $2,050.   These were part of the onions be-
longing to the joint account which were stored at the de-

fendants' warehouse. The plaintiff was not then informed of this "purported 'sale.'" The defendants, however, knew the terms of the joint account agreement between the plaintiff and Goodwyn, including the provision that the plaintiff should have a first lien on the onions for its advances. The memorandum of sale was an attempted transfer by Goodwyn of property of the joint account to secure his own private debt to the defendants. Goodwyn had no real or apparent authority to do this, and the defendant Charles F. Clark realized that Goodwyn had none. On January 11, 1929, the defendants wrote the plaintiff, "we [have] bought and paid for 1000 bags of set onions, and title thereto was delivered to us, and we hold it. The cost of these onions to us was $2,050." The letter then contains an offer to sell to the plaintiff the one thousand bags of onions "which we own" on or before January 15 at cost plus interest and storage charges and states that the offer will be withdrawn if not accepted and consummated on or before January 15. The letter contains no suggestion that the one thousand bags had been taken by the defendants for the purpose of collecting a debt owed to them by Goodwyn individually. When the plaintiff received this letter in New York the plaintiff's manager telephoned to Charles F. Clark, "who refused to release the 1,000 bags which he claimed his partnership had bought." On January 14 the plaintiff mailed to the defendant a check for the $2,080.75 demanded for the one thousand bags. This is the payment which the plaintiff seeks to recover. The payment was made because the plaintiff had contracted to sell four cars of "sets" to a concern in Boston and needed these "sets" badly to fill the order. The master was not satisfied that no similar onions could have been procured at any price, but prices had risen substantially since October 17, 1928. Charles F. Clark purposely kept knowledge of the transaction with Goodwyn from the plaintiff until the letter of January 11, knowing that the plaintiff was planning to resell the onions and would eventually need them to fill an order. Clark was consciously attempting to force the plaintiff to pay Goodwyn's personal indebtedness to the defendants.

Reduced to their lowest terms these findings mean that the defendants intentionally refused to deliver to the plaintiff, known to them to be one of the joint adventurers, property of the joint account, under a claim of title in themselves which they knew was unfounded, for the purpose of compelling the plaintiff to pay to them money which the plaintiff did not owe, and that they succeeded in accomplishing their purpose.

Without discussing the doctrine of duress of goods in general it is at least well established that a payment made to prevent a tortious seizure of property or to release property from a tortious detention is not regarded as a voluntary payment and may be recovered back. *Boston & Sandwich Glass Co.* v. *Boston,* 4 Met. 181. *Forbes* v. *Appleton,* 5 Cush. 115, 118. *Chandler* v. *Sanger,* 114 Mass. 364. *Cobb* v. *Charter,* 32 Conn. 358. *Whitlock Machine Co.* v. *Holway,* 92 Maine, 414. *Cowley* v. *Fabien,* 204 N. Y. 566. *Lonergan* v. *Buford,* 148 U. S. 581, 589. *Maskell* v. *Horner,* [1915] 3 K. B. 106. Williston on Contracts (Rev. ed.) § 1617. American Law Inst. Restatement: Contracts, § 493 (d).

None of the defences upon which the defendants rely can be maintained. The decree is within the frame of the bill. The bill is framed on the theory that the plaintiff was obliged to pay out its own money in order to bring to an end a wrongful detention of joint account assets in which it had property rights. The decree is consistent with this theory and is within the prayer for general relief. *Eastern Bridge & Structural Co.* v. *Worcester Auditorium Co.* 216 Mass. 426, 428. *Cole* v. *Wells,* 224 Mass. 504, 514.

The payment by the plaintiff was not a ratification by it of Goodwyn's purported sale to the defendants. The act of the plaintiff in sending the check to the defendants was no more voluntary as a ratification than it was as a payment.

The plaintiff is under no obligation to repay to the defendants any of the money which they advanced to Goodwyn, even though Charles F. Clark "expected" that the sums advanced would be used for the joint account, and though "it may fairly be inferred that a substantial portion thereof was actually so used." The finding is explicit that

these moneys were advanced to Goodwyn personally. The sums borrowed became Goodwyn's money. In reality it was Goodwyn who had the benefit of this money, although he devoted part of it to his joint account transactions with the plaintiff, in respect to which he was or became "short" in his accounts with the plaintiff to an amount greater than the total amount of these loans. Compare *Thacher* v. *Pray*, 113 Mass. 291, and see *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268, 279–280. The defendants, when they lent money to Goodwyn, acquired no more right than any other lender of money to seek repayment from third persons into whose hands the money might come as the result of dealings with the borrower. At least as against the plaintiff they acquired no additional right later by their attempt to obtain payment or security by means of the "sale" which they knew Goodwyn had no authority to make. It is not as if the plaintiff were trying to rescind an authorized transaction between the joint account and the defendants.

No demand was required as a condition precedent to the bringing of this suit. When the defendants exacted the payment from the plaintiff they became at once liable to repay it. *Perkins* v. *Davis*, 109 Mass. 239, 241.

*Decree affirmed with costs.*