FRANK J. MURPHY *vs.* THE BRILLIANT COMPANY.

Worcester. September 27, 1948. — December 29, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Volunteer. Payment. Evidence,* Foreign law. *Practice, Civil,* Variance,
Ordering verdict, Set-off of judgments. *Judgment. Set-off. Attorney
at Law. Lien.*

The law of Florida, not brought to the attention of the trial judge nor
argued in this court, might be assumed by this court to be the same
as the law of Massachusetts in an action at common law based on
transactions occurring in Florida.

Evidence, of the circumstances in which the owner of a boat, during the
making of repairs thereto in a shipyard, paid eight bills for the repairs
presented periodically by the proprietor of the shipyard and sub-
stantially exceeding in the aggregate a price agreed upon by the par-
ties, warranted findings that, although the owner of the boat protested
only some of the payments, he made all of them in the well founded
belief that if he did not make them the proprietor of the shipyard
would not complete the repairs nor surrender the boat, and that the
payments were made for the purpose of releasing the boat from a
threatened illegal detention thereof and were not voluntary.

An exception to the denial of a motion for a directed verdict not specifically
based on the pleadings will not be sustained merely on the ground of
variance.

The allowance of a motion for set-off of judgments for the respective
plaintiffs in cross actions was not to be disturbed at the instance of
one of the plaintiffs whose sole contention was that the set-off would
deprive his attorney of his attorney's lien contrary to G. L. (Ter. Ed.)
c. 235, § 27.

CONTRACT. Writ in the Central District Court of Worces-
ter dated May 24, 1946.

Upon removal to the Superior Court, the action was tried
before *Giles,* J., who also allowed a motion for set-off de-
scribed in the opinion.

*J. F. Driscoll,* for the defendant.

*F. D. Casey,* for the plaintiff.

SPALDING, J. The plaintiff in this action of contract
sought to recover for alleged overcharges arising out of the
repair of his boat by the defendant. The jury returned a
verdict for the plaintiff. The principal question for decision

is whether the judge erred in denying the defendant's motion for a directed verdict. The case is a cross action and was tried with an action in which the defendant here was plaintiff and the plaintiff here was defendant. In the latter case the jury returned a verdict for the plaintiff (defendant here) but it need not concern us, for the bill of exceptions now before us relates only to the case first mentioned.

These facts could have been found. In the early part of February, 1945, the plaintiff, a resident of Worcester, purchased a fifty-two foot motor cabin cruiser through a yacht broker in Florida. At the time the boat was purchased it was in the shipyard of the defendant, a Florida corporation, which was engaged in the business of building and repairing boats in Miami, Florida. Prior to its purchase by the plaintiff the boat had been owned by one Young. At about the time the boat was purchased the plaintiff asked one Lowery, who was superintendent of the defendant's yard and was "familiar with the boat," how much it would cost to "put the boat in shape." Lowery told him that it would cost between $5,000 and $6,000, "a low of $5,000 and a top of $6,000," and that he would furnish specifications of what the repairs were to include. Within a few days thereafter Lowery furnished specifications containing ninety-four items. After receiving the specifications the plaintiff told Lowery to go ahead with the work, and the price was finally fixed "at a low of $5,000 and a top of $6,000." Work was started on the boat on February 21, 1945. On March 20 the plaintiff received a bill from the defendant for $2,595.64 for work done on the boat between February 21 and March 9. The plaintiff told Lowery that he thought the amount was very high for the number of days work involved. Lowery replied, "Well, you don't need to worry about that. You've got a top price, anyway, . . . we render these bills and they have to be paid when they are presented." Later a bill covering the period from March 10 to March 19 for $3,009.06 was sent to the plaintiff. The plaintiff told Lowery at that time that he thought the bill was all out of proportion to the amount of work done on the boat and that the amount agreed upon was nearly used up by the

two payments. Lowery told him that "the bills had to be paid when they were presented, or the work would stop on the boat." The plaintiff paid the amount of the invoice. Subsequently a third bill for the period from March 20 to March 27 in the amount of $1,998.85 was rendered. The plaintiff told Lowery that "the thing was running completely out of line" and that when this bill was paid he would have paid more than he had agreed to. Lowery again told the plaintiff that the bill would have to be paid, or the work would stop. The bill was paid by the plaintiff. A fourth bill for the period between March 27 and April 5 in the amount of $2,502.94 was presented to the plaintiff and was paid. When a fifth bill for $1,748.06 was submitted to the plaintiff, he told one Balfe, who was vice-president of the defendant, that he thought "this thing was . . . running all out of line"; and that he had already "paid more than the . . . contract price for putting the boat back in shape." He then said to Balfe, "What are you going to do about this?" Balfe replied, "There isn't anything we can do about it. You'll have to pay for it. Your boat is here, and you can't take . . . [it] out . . . until these things are paid, and if you don't make this payment, work will stop. . . . No other yard would take . . . [the boat] as long as we have got a claim against" it. After remonstrating further, but to no avail, the plaintiff paid the bill. At about this time the equipment that belonged to the boat was in the yards of various subcontractors. When the sixth bill for $1,323.02 was rendered the plaintiff paid it but "protested." The seventh and eighth bills for $577.47 and $95.57 respectively covering the work done between April 20 and May 17 were paid by the plaintiff as they were presented. The eighth payment was the last, and brought the total of sums paid by the plaintiff to the defendant to $14,330.94.

A considerable amount of evidence was introduced by the plaintiff to show that the repairs were not done in a workmanlike manner. But this evidence need not be recited for reasons that will presently appear.

1. The defendant's motion for a directed verdict was rightly denied. Although the transactions here involved

took place in Florida, it does not appear that the law of Florida was in any way brought to the attention of the trial judge, and it has not been argued here. See G. L. (Ter. Ed.) c. 233, § 70. In these circumstances, since the action is at common law, we may assume that the common law of Florida is the same as our own. *Knych* v. *Trustees of New York, New Haven & Hartford Railroad,* 320 Mass. 339, 340.

The defendant argues that the plaintiff was not entitled to recover back the sums paid by him in excess of the alleged contract price because these payments were voluntary. The defendant invokes the familiar rule "that money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making the payment, cannot be recovered back unless there is fraud or concealment or compulsion by the party enforcing the claim." *Carey* v. *Fitzpatrick,* 301 Mass. 525, 527, and cases cited. *Hinckley* v. *Barnstable,* 311 Mass. 600, 604. This is true although no obligation to make the payment existed. *Rosenfeld* v. *Boston Mutual Life Ins. Co.* 222 Mass. 284, 289. And a mere denial of liability accompanied by a statement that the payment was being made under coercion does not render the payment involuntary. *Forbes* v. *Appleton,* 5 Cush. 115, 118. We think, however, that it could not be said as matter of law that the payments here were voluntary. The jury could have found that the bills were greatly in excess of the contract price; that on several occasions when the bills were rendered the plaintiff objected to the charges; that he was told that the work would not go forward and that he could not take his boat out of the yard unless he paid the bills; and that no other shipyard would take the boat while the defendant had a claim against it. If the jury found these facts, they would have been warranted in finding that the payments made by the plaintiff were not voluntary but were made for the purpose of releasing his property from a threatened detention that was illegal. [1] And that would be true even if, as the jury could

---

[1] We assume that the defendant would have a lien on the boat as security for the payment of the sum agreed upon for the repairs. See *Flesher* v. *Handler,* 303 Mass. 482, 483. But it could not hold the property to compel the payment of a larger sum.

have found, the plaintiff ordered extras not contemplated in the original contract. It could have been found that the sum demanded by the defendant was excessive even if the charges for extras were deducted. Payments made in these circumstances may be recovered back. *J. Abrams & Co. Inc.* v. *Clark,* 298 Mass., 542, 545, and cases cited. Williston on Contracts (Rev. ed.) § 1617. Restatement: Contracts, § 493 (d).

It is true, as the defendant has argued, that the plaintiff did not protest all of the payments. That is true of the fourth, seventh and eighth bills. Nor does it appear that the defendant, when these bills were paid, told the plaintiff that he could not have his boat until they were paid. But each of the parties had stated his position on at least three occasions, and in view of that the plaintiff might very well have concluded that nothing would be gained by a further protest. In the circumstances the jury could have found that the plaintiff never abandoned his position or acquiesced in the defendant's demands, and that he made all of the payments in the well founded belief that if he did not do so the defendant would not complete the work or surrender the boat. See *Maskell* v. *Horner,* [1915] 3 K. B. 106, 121. Contrary to the defendant's contention, the jury were not obliged to find that the parties entered into a new contract in which the larger sum was agreed to.

The contention that the judge erred in submitting the case to the jury because there was a fatal variance between the declaration and the proof is without merit. It is true that the declaration sought to recover back overcharges under an implied contract, whereas the evidence showed an express contract. But the defendant's motion for a directed verdict was not specifically based on the pleadings. It is settled that an exception to the denial of such a motion will not be sustained if the evidence was sufficient in any legal form of declaring to justify a finding for the plaintiff in any amount. *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 385. *Beit Bros. Inc.* v. *Irving Tanning Co.* 315 Mass. 561, 563. *Tinkham* v. *Wind,* 319 Mass. 158, 160.

Since the plaintiff was entitled to go to the jury on the

issue of the alleged overcharges, it becomes unnecessary to determine whether the plaintiff also made out a case for the jury on the question of whether the repairs were properly done.

2. As stated above, the defendant here was a plaintiff in a companion case which was tried with the case at bar, and obtained a verdict against the present plaintiff.[1] The plaintiff in the case at bar filed a motion in which he asked that the judgment and execution together with the costs in the case of The Brilliant Company against Frank J. Murphy be set off against the sum recovered by him against The Brilliant Company in the present proceedings and that execution issue for the difference. The motion was allowed subject to the defendant's exception. The sole argument made by the defendant in support of its exception is that the allowance of the set-off would deprive the attorney for the defendant of his lien under G. L. (Ter. Ed.) c. 221, § 50, as appearing in St. 1945, c. 397, § 1.

This exception must be overruled. "The power of the court to order a set-off of judgments does not rest upon statutes; it rests upon the common law and is to be exercised in accordance with general principles of justice and equity." *Goldman* v. *Noxon Chemical Products Co.* 274 Mass. 526, 529, and cases cited. Ordinarily the exercise of this power is at the discretion of the court. *Chipman* v. *Fowle*, 130 Mass. 352, 354. *Old Colony Trust Co.* v. *National Non-Theatrical Motion Picture Bureau, Inc.* 274 Mass. 377, 380. But the setting off of a judgment obtained in a cross action by a resident defendant against a judgment recovered against him by a nonresident plaintiff is expressly provided for in G. L. (Ter. Ed.) c. 227, § 2, and is an absolute right. *Franks* v. *Edinberg*, 185 Mass. 49. General Laws (Ter. Ed.) c. 235, § 27, provides a method[2] whereby

---

[1] That case was brought to recover compensation for repairs to the plaintiff's boat which were made subsequent to those involved in the present case.

[2] That part of § 27 prescribing the manner in which executions may be set off reads as follows: "Executions between the same parties may, if required by either party, be set off one against the other. In such case, the debtor in an execution which has been delivered to an officer to be served shall deliver his execution to the same officer, whether directed to him or to another, and the officer shall apply the smaller execution, so far as it will extend, to the satisfaction of the larger execution, and the balance due on the larger execution may be collected and paid by him as if there had been no set-off."

executions between the same parties may be set off "but such set-off shall not be allowed . . . Fifth, As to the portion of either execution upon which the attorney has a lien under section fifty of chapter two hundred and twenty-one." This provision applies equally to judgments. *Ocean Ins. Co.* v. *Rider*, 22 Pick. 210.

Under G. L. (Ter. Ed.) c. 221, § 50, before it was revised by St. 1945, c. 397, § 1, an attorney "who is lawfully possessed of an execution, or who has prosecuted a suit to final judgment in favor of his client, shall have a lien thereon for the amount of his fees and disbursements in the cause." This lien, however, was construed as extending only to such counsel fees as were included in taxable costs. *Blake* v. *Corcoran*, 211 Mass. 406, 407. *Check* v. *Kaplan*, 280 Mass. 170, 174. By the amendment of 1945, which is applicable here, the attorney is given a much broader lien. He now has a lien for his "reasonable fees and expenses."[1] We assume, therefore, that the defendant's attorney would have a lien on any judgment which the defendant might obtain against the plaintiff for his reasonable counsel fees and expenses, and that under G. L. (Ter. Ed.) c. 235, § 27, he could not be deprived of it by a setting off of judgments or executions. But it is difficult to see how the defendant is in a position to raise the point; it has not been aggrieved by the judge's ruling. Moreover the defendant's attorney may never assert his lien; it is a right which he can waive if he sees fit. And if the defendant pays him for his services in connection with the case there would be no occasion for him to assert it.

It follows that the defendant's exceptions must be over-ruled.

*So ordered.*

---

[1] Statute 1945, c. 397, § 1, now provides in part that "From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his *reasonable fees and expenses* upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom" (emphasis supplied). The statute also provides that "Upon request of the client or of the attorney, the court in which the proceeding is pending . . . may determine and enforce the lien."