## KILLION v. SCHLEIFER.

### No. 4492.

United States Court of Appeals
First Circuit.
July 5, 1950.

Richard C. Evarts, Boston, Mass. (Lyne, Woodworth & Evarts, Boston, Mass., on brief), for appellant.

Arthur T. Wasserman, Boston, Mass. (Wasserman & Salter, Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and FRANK, Circuit Judges.

MAGRUDER, Chief Judge.

Louis Schleifer of New York brought an action in the district court against William J. Foley[1] of Brookline, Massachusetts, claiming that he had suffered damages in the amount of $210,000 as a result of Foley's refusal, in violation of an alleged oral contract, to complete a sale to Schleifer of the Hotel Touraine in Boston. Attached to the complaint was a memorandum signed by Foley and allegedly containing in substance all the terms of the oral agreement. Defendant's answer, as amended, joined issue on the only question which remains open, given the present posture of the case: whether the memorandum of the oral agreement was sufficient to make the latter enforceable under § 1 of the Massachusetts Statute of Frauds, Mass.Gen.L.(Ter.Ed.) C. 259.

The case was tried to a jury under instructions with respect to which no error is assigned on this appeal. At the close of the evidence, defendant had moved the district court for a directed verdict. This motion was denied. The jury returned a verdict for plaintiff, assessing damages in the amount of $15,000.[2] There was a motion by defendant to set the verdict aside, and for judgment, on the ground that the motion for a directed verdict should have been granted. That latter motion complied with the requirements of Rule 50(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A., by reciting as the single specific ground therefor the contention that the terms of the agreement set out in the memorandum varied from those which were in fact orally agreed to.

The district court's refusal to direct a verdict is the only error assigned on this appeal. We need not inquire, therefore, whether any issue other than that of the adequacy of the memorandum under the Statute of Frauds was properly left to the jury, or was submitted to them with correct instructions. Appellant in his brief argues also that no valid agreement was ever reached by these parties, for the reason, among others, that the terms of the sale were left too indefinite for enforcement and were subject to further negotiations. We are satisfied that this contention is unsound, even if it were properly before us. See Letts-Parker Grocer Co. v. W. R. Marshall & Co., Inc., 1919, 232 Mass. 504, 505–506, 122 N.E. 412. Cf. Bray v. Hickman, 1928, 263 Mass. 409, 161 N.E. 612.

We turn then to the question whether the memorandum satisfies the Massachusetts Statute of Frauds. See 2 Williston, Contracts § 574 at p. 1642 (Rev.Ed.1936).

Defendant's argument centers around the price as noted in the memorandum. We quote in the margin the pertinent paragraph.[3] It is said that upon cross-examination the plaintiff himself stated that all he "obligated" himself to was $200,000; that therefore on his own testimony he did not agree to buy the hotel for $2,550,000 but for $200,000; from which it would follow that the memorandum did not ac-

---

1. Shortly before the cause came on for trial, William J. Foley died and the present defendant, who is Foley's executor, was duly substituted for him.

2. Plaintiff cross-appealed asking for a new trial on the issue of damages only. However, upon motion by plaintiff in open court, there being no objection, we ordered the cross-appeal dismissed.

3. "Now, therefore, the Seller agrees to sell and the Buyer agrees to purchase the Hotel Touraine in accordance with the following terms and conditions:

"1. The total price of the purchase is the sum of $2,550,000 which sum shall be paid as follows:

"a. $10,000 to be paid on the signing of this instrument, receipt of which is hereby acknowledged.

"b. $190,000 to be paid July 27, 1948 on which date title is to be conveyed free and clear of any and all violations, and

"c. $1,500,000 subject to a first mortgage for a term of not less than 15 years at interest rate of 4% annually and amortization of 2% annually, (to be paid quarterly or semi-annually.—W.J.F.).

"d. Subject to a second mortgage of $850,000 for a term of not less than 15 years at interest rate of 4% annually payable quarterly."

curately state the price agreed to in the oral contract.

One answer to this contention may lie in such closely applicable cases as Hayes v. Jackson, 1893, 159 Mass. 451, 34 N.E. 683, and Forman v. Gadouas, 1924, 247 Mass. 207, 142 N.E. 87; but cf. Bogigian v. Booklovers' Library, 1907, 193 Mass. 444, 79 N.E. 769, in which under very similar circumstances § 2 of the Massachusetts Statute of Frauds was invoked. But we do not rest on this ground.

 The statement elicited from plaintiff on cross-examination is ambiguous. It seems to us clear from the context that plaintiff meant he was obligating himself to only $200,000 *in cash*. His further testimony that he did not plan to execute the first mortgage may mean no more than that Foley was to obtain it in the first instance, which no one denies. Plaintiff testified also at the same time that he was "paying $2,550,000" and was "buying [the hotel] subject to a first mortgage." We do not think that the jury need have had regard for these ambiguities. They indicated at most only what plaintiff himself, subjectively, believed he had agreed to. But the record is replete with objective evidence of what was actually said by the negotiating parties when the oral agreement was reached. The testimony is undisputed that the price agreed on was $2,550,000. The asking price was $2,700,000, with $400,000 cash. Schleifer originally offered $2,500,-000; $2,550,000, with $200,000 cash, was the compromise. It appears that there was never any discussion specifically as to whether or not Schleifer was to sign the mortgages. The price was stated and referred to several times in precisely the terms contained in the memorandum. It was said to be "subject to" the mortgages, in the amounts and on the terms noted. Just what was meant by this formulation of the price was a jury question. Bresky v. Rosenberg, 1926, 256 Mass. 66, 74–75, 152 N.E. 347. Most likely, as the jury could have found, Schleifer was undertaking to pay off the mortgages. But whatever the phrase "subject to" may be thought to mean, it was the phrase which to the parties signified their agreement both when they reached it orally and when they afterwards embodied it in the memorandum. An oral agreement is enforceable although it may not be above the need for construction; and a memorandum complies with the Statute of Frauds although it only recites, without definitively construing, the terms of an oral agreement.

 A reading of the record convinces us that the memorandum noted all the points on which oral agreement was reached, and we think that the Massachusetts Statute of Frauds was satisfied.

The judgment of the District Court is affirmed.