*Municipal Court of the City of Boston*

No. 495844

GOVERNOR APARTMENTS, INC.

v.

HUGH A. CARNEY, TR.

(February 26 — August 5, 1960)

*Present:* Gillen, J. (Presiding), Fox & Shamon, JJ.

Case tried to *Adlow, C. J.*

(*This opinion has been abridged.*)

*Shamon, J.* Action of contract to recover $597.65 paid to the defendant through his alleged coercion and compulsion under the following circumstances:

On October 16, 1958, the plaintiff was the owner of the premises numbered 186-194 Kelton Street and 162-164 Allston Street, in

the Brighton section of Boston; that the defendant held a purchase-price mortgage thereon in the sum of $93,000; that prior to July 1, 1958, the plaintiff made certain alterations to the heating system of its properties which the defendant contended were voluntary waste, causing the defendant to file a Bill in Equity in the Suffolk Superior Court praying permission to foreclose said mortgage; that on July 1, 1958 a decree was entered in the Superior Court authorizing the defendant herein to foreclose from which the plaintiff seasonably filed an appeal to the Supreme Judicial Court; that in the interim between the date of the decree, July 1, 1958 and the 16th day of October, 1958, the parties herein, through their representatives, Maurice Gordon, for the plaintiff and Hugh A. Carney, for the defendant, negotiated a compromise agreement of the mortgage indebtedness, having a maturity of eight years at 4% per annum; which agreement both executed for their respective clients, and admitted in evidence as Exhibit "A" at the trial. It reads:

"Boston, Massachusetts

October 16, 1958

Receipt is hereby acknowledged of $10,000.00 from Maurice Gordon to be applied to the present balance of a mortgage dated June 1, 1956 receiving from Maurice Reubens to Carney Newman Trust, Hugh A. Carney Trustee, covering the following premises, 162 and 164 Allston Street and 186, 190, 192, and 194 Kenton Street, in said Boston, said mortgage is recorded in Suffolk Registry of Deeds.

In the event that within thirty days from the date hereof the said Maurice Gordon pays to the Carney Newman Trust,

Hugh A. Carney Trustee, the further sum of $77,500.00, said mortgage is to be considered as fully paid and a discharge shall issue therefor. Otherwise the said balance shall be $83,000.00 after the within payment of $10,000.00.

Ten days of grace will be given on the above arrangement if required.

ACCEPTED: Governor Apartments

/s/ By: Maurice Gordon

Carney Newman Trust

/s/ Hugh A. Carney Trustee

and not individually."

That both Gordon and Carney are men with considerable experience in real estate matters, Carney being also a practicing lawyer of long standing.

On December 3, 1958, the plaintiff tendered to Carney the sum of $77,500, being the balance due under the agreement, "A" and requested a discharge of the mortgage which was refused unless a further sum of $597.50 were paid and which represented interest up to the third of December, 1958 on said mortgage; that both parties thereupon engaged in a heated argument, Gordon maintaining that the agreement "A" was being complied with by him and that a complete discharge of the mortgage was mandatory upon the defendant; that Carney refused to give such a discharge and threatened to proceed with the foreclosure of the mortgage unless the interest demanded were paid; that thereupon, the sum of $597.65 was paid by Gordon under protest representing interest detailed upon Exhibit "B" which reads as follows:

"Oct. 1/15        $93,000  ½ of $310        $155.00
Oct. 15 to Nov. 1   83,000  ½ of $276.66      138.33
Nov. 1 to Dec. 1    83,000  $276.66          276.66
Dec. — 3 days       83,000  1/10 of $276.66   27.66

                                            $597.65

Boston, Massachusetts                December 3, 1958

The above amounts were paid under protest to Hugh A. Carney as he is trustee of the Carney Newman Trust and not individually."

The present suit is brought to recover the said sum of $597.65 paid under protest. In finding for the defendant, the judge stated: "In construing the agreement before the court, I have considered it as limited in scope to principal on mortgage and in no manner affecting the interest running to the time of the discharge."

The plaintiff's grievance is grounded upon the finding of the court below and the denial of plaintiff's requests for rulings numbered 10, 11 and 12.

Request 10 reads:

"Upon the evidence, the defendant agreed to return to the plaintiff the sum of $597.65 as interest if the court determines that said sum is not called for in the agreement between the parties."

Request 11 reads:

"The evidence warrants a finding that the plaintiff is entitled to recover."

Request 12 reads:

"The law warrants a finding that the plaintiff is entitled to recover."

█ The right of the plaintiff to recover the $597.65 is to be determined by the construction of the agreement "A". If by this agreement the parties settled completely and finally their rights and liabilities under the mortgage and if this agreement was to represent the end of their relationship as debtor-creditor, and upon compliance with its terms "said mortgage is to be considered as fully paid and a discharge shall issue therefor" then the defendant's demand of interest was without right and the payment thereof by the plaintiff by the threat to foreclose is recoverable in this action.

In allowing the plaintiff's requests, numbered 1-9, the trial judge found that the defendant agreed to consider the mortgage as "fully paid" and "to issue a discharge thereof upon the payment of $87,500 (plaintiff's request for ruling No. 1). The trial judge also found that the defendant refused to acknowledge the mortgage as "fully paid" upon tender of the balance of $77,500; that the defendant threatened to foreclose the mortgage unless the plaintiff paid the additional sum of $597.65 as interest, which was not called for by the document "A"; that such payment by the plaintiff was not voluntary but was paid under protest.

The finding of the trial judge in favor of the defendant must be sustained solely on the ground that his construction of agreement "A" was right. Resort therefore, must be had to agreement "A" to determine the intention of the parties executing it.

█ It is a sound principle of law that in interpreting a writing, the court, in order to determine its meaning, will consider all the facts and circumstances attending its execution. Among the facts so considered are the relation of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. Stating it another way, the court will, if necessary, put itself in place of the parties and read the instrument in the light of the circumstances surrounding them at the time it was made and of the objects which they evidently had in view.

█ It is also a sound principle of law that *"expressio unius est exclusio alterius"* [expression of one thing is exclusion of another] in determining and carrying out the intent of the parties. *Hamlen v. Rednelloh,* 291 Mass. 119, 123; 17 CJS 730, §312. If the language of the agreement "A" is express and affirmative upon a defined condition, to consider the mortgage "fully paid" the expression of that condition excludes any other condition not expressed. Such language precluded an implication for the payment of interest and repudiates any other inference than that the meaning of the parties was to end all business relationships upon the compliance by the plaintiff of the unambiguous terms set forth therein.

█ The meaning, therefore, of agreement "A" was a question of law to be settled by the language of the contract itself.

·[5.] The power to interpret the agreement did not give the judge the power to make a new contract for the parties. He cannot extend it beyond its reasonable import.

It is pertinent, therefore, to inquire the purposes the parties intended to accomplish by their agreement. That both parties desired an end to a controversy between them is axiomatic. The defendant was interested in securing payment of his mortgage which had eight years to run at 4% interest and as an inducement, discounted it by $5,500. The plaintiff likewise desired to dispose of a controversy then in litigation and to take advantage of the $5,500 discount and to put an end to its business dealings with the mortgagee. They sought to achieve these purposes by entering into agreement "A". It was not until the plaintiff tendered the balance of $77,500 to the defendant in compliance with the condition set forth in agreement "A" that the defendant sought to inject a further condition therein by demanding the payment of interest.

The defendant was without legal justification in his demand of interest and that the plaintiff was entitled to a discharge upon the tender of the $77,500 and upon such payment the defendant was obliged to deliver a discharge of the mortgage which was to be considered as *fully paid.*

Strictly speaking, a mortgagor does not pay a mortgagee when paying off a mortgage but pays off an obligation which is the note secured by the mortgage. The word

"mortgage" is often used inartistically when the obligation is meant and hence in agreement "A" when the mortgage was to be considered *fully paid* the intention of the parties was to liquidate the obligation which was the entire debt of $83,000. The words "said mortgage" is to be considered as fully paid and a discharge shall issue therefor" means a complete, final, and definite termination of all obligations of the parties.

The written agreement when it is fulfilled has the effect of an acknowledgment of a debt paid in full and the defendant by demanding interest, was contending for a construction of it in direct contradiction of its terms and seeks to import into it a condition of which the written recitals furnish no clue or limitation whatsoever. The agreement between the parties purported to be a solution of the entire controversy and to be an absolute one.

That such agreements are frequently made in real estate transactions are matters of common knowledge.

There was no finding by the judge that there was any talk about interest even though inadmissible evidence, not objected to, was permitted. By his finding that "the scope of the agreement did not include interest" we must conclude that the trial judge ruled by inference, that both parties are bound by the explicit, clear, and unambiguous terms of agreement "A". It would not be sound to construe the agreement "A" signed by both parties to exclude an inference that all rights

and liabilities were to be compromised and adjusted. In construing it as he did, the trial judge inserted a construction not supported that interest was not included.

The holder of a note secured by a mortgage has two distinct rights, one against the land and the other against the borrower or mortgagor. If there is a merger, the mortgage holder of the note cannot maintain an action against the mortgagor on the mortgage note, even though the value of the land was less than the amount of the mortgage. *Dickenson v. Williams,* 129 Mass. 182; *Hester v. Frary,* 17 Chicago Law Journal 45 (Ill. App. Ct.), where plaintiff having acquired an estate subject to a mortgage, bought in the note and the mortgage securing it. He then sued on the note. It was held that the equity of redemption merged with the legal estate and that the debt was extinguished by the merger. 15 Howard L.R. 749. The extinction of the debt is a necessary consequence of a discharge of the mortgage unless some words are used to prevent a merger, such as "this conveyance shall not result in a merger" or other equally effective language. See 15 Howard L.R. 740.

A decision of our Supreme Judicial Court disposes of the contention of the defendant in a similar case and resolves the present controversy. In *Dickman v. McClellan,* 302 Mass. 87, the defendant held the plaintiff's note for $3,000, secured by a mortgage on the plaintiff's real estate. At a time when the full amount was admittedly due and payable, the plaintiff paid the defendant $2,100 upon an

oral agreement between the parties that such payment should cancel the entire indebtedness. The defendant thereupon gave to the plaintiff a discharge of the mortgage under seal in statutory form, wherein after identifying the mortgage, he acknowledged "satisfaction of the same". The discharge of the mortgage contained no express words of release or discharge of the note. The defendant later sued the plaintiff on the note demanding the balance of $900. The plaintiff sued in equity to restrain the suit on the note and to reform the mortgage. A final decree was entered reforming the mortgage discharge so that the defendant should "acknowledge satisfaction of the (mortgage) and the note secured thereby" and enjoining the defendant from proceeding further with his action on the note.

In that case, the Master to whom it was referred, found that both parties intended that the payment of $2100 should completely discharge the note as well as the mortgage and that the note was not thought of until afterwards, although the scriviner who drew the discharge thought that the note would be discharged as matter of course when the discharge was given.

The court's conclusion was to the effect that the parties relied upon the discharge as the expression of their agreement and intended that the instrument should be so worded as to release the note as well as the mortgage and that the failure to include the necessary

words in the discharge (on the assumption that additional words were needed) was due to a mutual mistake or a mutual misapprehension of the effect of the words used, by the parties and by the scriviner, who was their agent.

The decision in the *Dickman* case is important because the court construed the oral agreement by the mortgagor and the mortgagee, who used substantially the same language as in the case at bar "that such payment should cancel the entire indebtedness" to mean a full discharge of all liabilities by the payment of $2100 to compromise a claim of $3,000.

The language used in the case at bar is "said mortgage is to be considered as fully paid and a discharge shall issue therefor". It is submitted that if the court in the Dickman case construed the oral agreement to be a compromise of the liabilities of both parties by the payment of $2100 to cancel a *liquidated debt of* $3000, and gave effect to their intentions by restraining the suit on the note and ordering a reformation of the discharge to include the note, then in the case at bar, the tendering of the check for $77,500 was the performance of an act to which both parties agreed by their agreement would result in a satisfaction and discharge of *all* their rights and liabilities, particularly when the mortgage had eight years to run at a low rate of interest. The natural and logical construction of the written agreement was that the parties intended to liquidate their

responsibilities and to leave nothing outstanding. To construe their agreement to mean that the mortgagee could demand interest is unrealistic and contrary to a good common sense view of the transaction. When it is considered that in the *Dickman v. McClellan* case, the court enforced an oral agreement even though a less sum was involved in the payment of a greater sum, because the construction of the oral agreement interpreted the minds of the parties in a reasonable and common sense manner, then the case at bar is an *a fortiori* (stronger) case in favor of the plaintiff. In the *Dickman* Case, the mohtgage debt of $3,000 was due, and the sum agreed upon to cancel the entire indebtedness was $2100, which was paid and accepted. The court refused to permit the mortgagee to sue for the balance of $900. In the case at bar, the mortgage had eight years to run at a low rate of interest at 4%, and it was to the advantage of the mortgagee to receive payment since interest rates in the money market had risen and the 4% money could command a much higher rate of interest as was proved by the fact that the plaintiff raised a new mortgage at a 5½% rate to pay the mortgagee the $77,500 called for under agreement "A". The controlling language in the *Dickman* Case was the phrase "to cancel the entire indebtedness", while the controlling phrase in the case at bar is "said mortgage to be considered as fully paid and a discharge shall issue therefor."

It is elemental that a written contract

should be given a construction that will make it a rational business instrument and will effectuate what appears to have been the intention of the parties. It is also an elemental rule in the construction of contracts, that wherever practicable every word used by the parties shall be given effect. *Bray v. Hickman,* 263 Mass. 409.

In the *Bray* case, the agreement for the sale of real estate and the furniture therein, provided that the buyer should give to the seller a second mortgage for $9,000. There was no stipulation in the real estate agreement that the second mortgage was to cover the real estate alone, the parties having failed to exempt any part of the property to be sold, both real and personal is to be subject to the second mortgage of $9000. This case is cited to show that the construction of the meaning of the agreement in reference to the second mortgage, although silent as to the personal property to be included in it, was a reasonable interpretation of the intention of the parties and gives force to the language used by them as set forth in the agreement.

It is a common sense interpretation which the law regards as sound and in ascertaining what the parties intended, resort may be had to the language of the parties, the subject matter and the accompanying circumstances as of the date of the contract.

A similar compromise arrangement is set forth in the case of *Quirk v. Smith,* 268 Mass. 536 and construed similarly to our construction of agreement "A" in this case.

In that case, the plaintiff filed a suit in equity to reach and apply property of a member of a firm of stockbrokers in payment of a debt alleged to be due to the plaintiff from the firm for false and fraudulent representations; that the firm had been adjudicated bankrupt and the plaintiff filed a petition for reclamation of the funds he had paid on the grounds that by reason of the fraud of the bankrupts, the money had been impressed with a trust and should be returned to him.

The petition for reclamation was compromised by the payment of the sum of $3500 out of the assets of the bankrupt estate.

In the suit in equity, which was referred to a master, the latter found that in making the compromise, the plaintiff "did not intend to waive any claim that he might have against the three partners individually outside of the bankruptcy court, that nothing was said on the subject one way or another at the time the agreement was made, and that he intended then to compromise only the claim that was in that court."

The master left to the court that, whether "regardless of the intentions of the plaintiff, the effect of these proceedings was as a matter of law to compromise the claim." The judge in the Superior Court ruled and found on the hearing on the final decree, that, in seeking to follow the funds in the hands of the trustees and in accepting the compromise of his claim, the plaintiff had elected to disaffirm the original transaction and could not maintain

his bill. A decree was entered dismissing the bill. Although the Supreme Judicial Court upheld the decree dismissing the bill it did so not on the grounds stated by the judge in the Superior Court. It upheld the dismissal of the bill on the ground that "the payment of the $3500 was in compromise of the claim for $10,000 under the reclamation proceeding. It was not an adjudication that $3500 was all that was due. *It was a compromise of the whole claim.* (italicizing ours). The case as against the plaintiff stands as if he had been paid the entire $10,000."

The court further stated, "It is of no avail to the plaintiff to introduce evidence that he intended to compromise only the claim in the bankruptcy case, and did not intend to release or to waive any claim he might have against the partners individually outside the bankruptcy court. Nothing was said on the subject between the plaintiff and the trustee in bankruptcy at the time the agreement for compromise was made. The trustee intended to settle definitely all claims against the bankrupt estate."

The court further states that "in these circumstances, the law affixes its own interpretation to the acts of the parties and stamps upon the transaction its own consequences. What took place was the compromise of a disputed claim. The claim was thereby extinguished. The unexpressed intent of one

party cannot control the legal effect of what was done."

The construction of agreement "A" is strained and unnatural. No express term therein supports it and it contains no limitation express or implied calling for the payment of interest.

Agreement "A" was entered into by the parties to settle a controversy and an unliquidated claim which was in litigation. Its terms are unambiguous and unconditional, but is in legal effect, an agreement to give a full discharge of all liabilities of the plaintiff to the defendant and to put an end to all rights of the defendant against the plaintiff.

In his finding that the scope of the agreement did not include interest the trial judge ruled by inference that both parties are bound by the explicit, unambiguous terms of agreement "A". In our opinion it would not be sound construction of agreement "A" to exclude an inference that all rights and liabilities of the parties were to be compromised and adjusted completely. In construing agreement "A" as he did, the trial judge inserted a construction not supported that *interest* was not included.

Refusal of plaintiff's requests for rulings numbered 10, 11, and 12, requires us to sustain the plaintiff's appeal.

*Finding for the defendant vacated. Finding to be entered for the plaintiff in the sum of $597.65.*

*Gillen, J.* (Dissenting) : I think that there should be a new trial. The plaintiff is a corporation yet the report reads in part: "The plaintiff further testified that the argument finally reached the point where the defendant said to him, 'If you do not pay this interest, I will foreclose.' That as a result of this statement allegedly made by the defendant the plaintiff made out his personal check in the amount of $597.65."

The evidence in the report is ambiguous and confusing. *Dillon v. Framingham,* 288 Mass. 511; *Hailer v. Tenaglia,* 15 Mass. App. Dec. 160.

S. *Myron Klarfeld* of Boston for the plaintiff, in connection with his contention that "Money paid under duress, coercion or unjustified threat is not a voluntary payment and may be recovered in an action at law" cited: *Murphy v. Brilliant Co.,* 323 Mass. 526; *Carey v. Fitzpatrick,* 301 Mass. 525; *Abrams & Co. v. Clark,* 298 Mass. 542; *Chandler v. Sanger,* 114 Mass. 364; *McMurtrie v. Keenan,* 109 Mass. 185; *Forbes v. Appleton,* 5 Cush. 115; *Cazenove v. Cutler,* 4 Met. 246; *Boston v. Boston,* 4 Met. 181; *Bliss v. Thompson,* 4 Mass. 488; Restatement, CONTRACTS, §493; Williston on Contracts, (Rev. Ed.) §1617.

*William J. Carr* of Boston, for the Defendant.